**INTERNATIONAL ASSOCIATION OF TOOL CRAFTSMEN et al., Appellants,**

**v.**

**Boyd LEEDOM et al., Individually and As Chairman and Members of the National Labor Relations Board, Appellees.**

**No. 15078.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 24, 1959.

Decided Feb. 29, 1960.

Mr. Robert Sheriffs Moss, Washington, D. C., for appellants.

Mr. James C. Paras, Atty., N.L.R.B., with whom Messrs. Thomas J. McDermott, Associate Gen. Counsel, N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., and Frederick U. Reel, Atty., N.L.R.B., were on the brief for appellees.

Before BAZELON, WASHINGTON and BASTIAN, Circuit Judges.

BAZELON, Circuit Judge.

This is an appeal from an order of the District Court, entered on cross motions, granting summary judgment for appellees, the chairman and members of the National Labor Relations Board, in appellants' suit for equitable relief. The complaint challenged the Board's action in dismissing eight of appellants' petitions, under § 9 of the Labor Management Relations Act, 61 Stat. 143 (1947), as amended, 29 U.S.C.A. § 159, requesting separate representation rights for certain craft employees at various plants

of the General Motors Corporation and one plant of the Ford Motor Company. The United Automobile Workers (UAW) has long been the exclusive bargaining agent for a great majority of the employees at almost all General Motors and Ford plants, including those plants named in the petitions. Although the UAW has been certified by the Board on an individual plant basis, the Companies and the Union have always negotiated nation-wide and company-wide master contracts covering all the plants at which the Union is the collective bargaining agent.

The Board found "on the entire record, that in consequence of this long history of collective bargaining and the exclusive recognition accorded the United Automobile Workers by General Motors on a multi-plant unit basis, there has come into existence and there now exists a single company-wide bargaining unit * * *." 1958, 120 N.L.R.B. 1215, 1221. It also found the same to be true at Ford. It then pointed to its long-held policy "that requests for severance elections must be coextensive with the existing bargaining unit from which a union seeks to detach specified categories of workmen," citing St. Regis Paper Co., 1952, 101 N.L.R.B. 655. Accordingly, the Board held that the single plant units sought here were "too narrow in scope and therefore inappropriate for purposes of collective bargaining." 120 N.L.R.B. at page 1221.

■ Appellants' principal contention in this appeal is that the 1947 enactment of § 9(c) (5) "precludes the Board from basing its unit determination upon history of bargaining." [1] That section provides that "In determining whether a unit is appropriate * * * the extent to which the employees have organized

---

1. Appellants sought review in the court below on the theory that the Board's action violated § 9(b) (2). That section provides that the Board shall not "decide that any craft unit is inappropriate * * * on the ground that a different unit has been established by a prior Board determination * * *."

On appeal appellants have apparently abandoned any contention that the Board acted in contravention of § 9(b) (2), for their brief does not list it in the statement of points.

shall not be *controlling.*" (Emphasis supplied.)

The jurisdiction of the District Court to grant relief in this original equity suit depends upon a clear showing that the Board acted "in excess of its delegated powers and contrary to a specific prohibition in the Act," Leedom v. Kyne, 1958, 358 U.S. 184, 188, 79 S.Ct. 180, 184, 3 L.Ed.2d 210. To read section 9(c) (5) as such a prohibition it must plainly appear that bargaining history (upon which the Board relied) and the "extent of organization" (which "shall not be controlling") are one and the same.

The Board urges that the legislative history of § 9(c) (5) establishes that the "bargaining history and extent of organization are not identical but are totally dissimilar." It says that the meaning of "extent of organization" as used in § 9(c) (5) is apparent from the purpose of that section. That purpose, we are told, was to overrule some pre-1947 decisions of the Labor Board which certified smaller than normal bargaining units solely because the Union had organized less than a majority of the employees in what otherwise would be an appropriate unit. See, e. g., 93 Cong.Rec. 6444, 6860 (1947) (Statements of Senator Taft). In contrast, a successful "history of bargaining," says the Board, is merely some evidence of natural groupings of employees which it has consistently taken into consideration in determining what constitutes an appropriate unit. See Cox, Cases on Labor Law 364 (4th ed. 1958).

We need not decide whether we would sustain the Board's view if the question were presented to us in an appeal under the judicial review provisions of § 10 of the Act. 61 Stat. 146, as amended, 29 U.S.C.A. § 160. We need only decide, as we do, that the statutory language itself and the legislative history sufficiently support its position to eliminate the essential requirement for invoking the District Court's equity jurisdiction, namely, a showing that the Board violated a "clear and mandatory" statutory prohibition by according controlling consideration to bargaining history. Leedom v. Kyne, supra, 358 U.S. at page 188, 79 S.Ct. at page 183; Leedom v. Norwich, Connecticut Printing Specialities, etc., Union, 1960, 107 U.S. App.D.C. ——, 275 F.2d 628.

Appellant also suggests that the Board has evaded its statutory duty to determine the "appropriate unit" by dismissing the craft severance petitions, without a hearing, on the ground that they were not coextensive with the existing bargaining unit. Section 9(b) requires the Board to determine "in each case" which unit will "assure to employees the fullest freedom in exercising the rights guaranteed by this Act * * *." [2] The Board did not say why employees cannot exercise the fullest freedom in collective bargaining unless severance petitions are coextensive with the existing unit. But the question of an appropriate bargaining unit falls within "the wide area of determinations which depend on the Board's expertise and discretion," Leedom v. Kyne, 1957, 101 U.S. App.D.C. 398, 249 F.2d 490, 491, affirmed, 1958, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed. 2d 210, and the statute does not specify any matters pertinent here which the Board must consider to insure such freedom. Consequently, we cannot say that the Board's procedure has violated any "clear and mandatory" provision of the Act. Leedom v. Kyne, supra, 358 U. S. at page 188, 79 S.Ct. at page 184. What factors the Board considered and what weight it accorded to them are questions which may only be raised in a judicial review proceeding under § 10.

We therefore conclude that the District Court's order dismissing this suit is correct.

Affirmed.

---

2. Section 9(b) reads:

"The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof * * *."