Harold A. BOIRE, Regional Director, Twelfth Region, National Labor Relations Board, Appellant,

v.

The MIAMI HERALD PUBLISHING COMPANY, Appellee.

No. 20982.

United States Court of Appeals Fifth Circuit.

March 11, 1965.

Rehearing Denied April 28, 1965.

Stephen B. Goldberg, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, for appellant.

D. P. S. Paul, P. D. Thomson, Paul & Sams, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, JONES and GEWIN, Circuit Judges.

GEWIN, Circuit Judge:

This is an appeal from an order granting the motion of the appellee for a preliminary injunction which restrains the appellant, as Regional Director for the Twelfth Region of the National Labor Relations Board, from counting the ballots cast in a representation election held under Board auspices on July 25, 1962. The question presented is whether the district court properly exercised its equity powers in enjoining the representation proceedings under the doctrine of Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958).

The instant suit represents the employer's second attempt to halt the election machinery on the ground that the Board acted in excess of its statutory powers when its regional director ordered that an election be held to determine whether the company's pressroom employees should be represented by Local 46, Miami Newspaper Printing Pressmen's Union, AFL-CIO. The prior history of this litigation is somewhat involved,[1] but the

---

1. Pursuant to a petition filed by Local 46, the appellant directed that an election be held on July 25, 1962, to determine whether the company's pressroom employees would be represented by the union. His Decision and Direction of Election provided that "also eligible are employees engaged in an economic strike which commenced less than twelve months before the election date and who retained their status as such during the eligibility period. * * *" The Notice of Election, which was issued to implement the Decision and Direction of Election, likewise provided that economic strikers who had been permanently replaced could vote in the election. Since the union had instituted an economic strike at the company's plant on August 1, 1961, substantially all of the company's

employer's basic complaint throughout has been that, under the 1959 amendment to § 9(c) (3) of the Act, 29 U.S.C.A. § 159(c) (3), the Board cannot allow economic strikers who have been permanently replaced to vote in representation elections until it has complied with its allegedly mandatory duty to promulgate regulations governing their eligibility.[2] It is admitted that the Board has never issued regulations in accordance with the provisions of the Administrative Procedure Act, which are applicable to NLRB rule-making and adjudicatory processes.[3] The Board has consistently taken the position that section 9(c) (3)

pressroom employees had been permanently replaced.

On the day before the election was scheduled to take place, the company filed a complaint in the United States District Court for the Southern District of Florida seeking an injunction against the impending election on two grounds: (1) the Board acted in clear violation of the terms of § 9(c) (3) in directing an election in which economic strikers not entitled to reinstatement were allowed to vote without first issuing regulations in accordance with the requirements of the Administrative Procedure Act; and (2) the Board violated the plain terms of § 3(b) of the Act when only one member denied the company's request to review the Regional Director's Decision and Direction of Election. The court allowed the election to proceed as scheduled, but ordered the ballots impounded pending a final determination of the controversy. Before the court could hold a hearing on the merits, the Board, acting through four of its members, issued an order which vacated the prior order of one member denying the company's request for review. It also set aside the July 25 election and granted the petition for review. The Florida district court thereupon dismissed the pending suit without prejudice, on the ground that the valid action of the Board in setting aside the election and granting the petition for review rendered the cause moot. The Miami Herald Pub. Co. v. Boire (S.D.Fla.1962) 209 F.Supp. 561.

The Board later passed upon the merits of the company's request for review. It ruled adversely to the company with respect to the contention that § 9(c) (3) required the Board to issue regulations to govern the voting eligibility of economic strikers, and it explicitly affirmed its prior decision to regulate their franchise rights through the adjudicatory process. Therefore, the Regional Director was ordered to conduct a rerun election.

Before the rerun election could be held, the union attacked the Board's action in a District of Columbia court, requesting declaratory and injunctive relief on the ground that the Board's action in ordering the rerun election constituted a clear violation of § 9(c) (1) of the Act, 29 U.S.C.A. § 159(c) (1). Ultimately, the Court of Appeals for the District of Columbia agreed with the union's contention that it was entitled as a matter of law to have the Board certify the results of the July 25, 1962, election. Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch (1963) 116 U.S.App.D.C. 243, 322 F.2d 993. The basis of the court's decision was that § 9 (c) (1) imposed a mandatory duty on the Board to certify the results of an election once it had itself determined that the election was validly conducted. The court also stated that any procedural defect which may have existed because of the denial of a request for review by one member of the Board was cured by the subsequent action of four members granting the original request. The company was not a party to this proceeding.

Pursuant to this decision, the appellant ordered the counting of the ballots cast in the July 25 election. The company immediately filed the instant suit to restrain the appellant from counting any of the ballots.

2. Section 9(c) (3) of the Act provides in pertinent part as follows:

"(3) No election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held. *Employees engaged in an economic strike who are not entitled to reinstatement shall be eligible to vote under such regulations as the Board shall find are consistent with the purposes and provisions of this Act in any election conducted within twelve months after the commencement of the strike.*" (Emphasis added)

The italicized portion was added to the statute in 1959 to replace an earlier sentence denying the right of franchise to economic strikers who were not entitled to reinstatement.

3. See 29 U.S.C.A. § 156. The APA was expressly made applicable to the 1959

does not require the promulgation of regulations as a condition precedent to the eligibility of replaced economic strikers to vote in representation elections. Pursuant to the theory that section 9(c)(3) leaves the Board free to regulate the eligibility of economic strikers through the adjudicatory process, it has chosen to decide such questions on a case-by-case basis. See W. Wilton Wood, Inc., 127 N.L.R.B. 1675 (1960); Tampa Sand & Material Co., 129 N.L.R.B. 1273 (1961).

The company's complaint requests that the court declare the July 25 election void, order the ballots destroyed, and enjoin the appellant from conducting any representation election involving the company's pressroom employees until he amends his Decision and Direction of Election to prevent economic strikers not entitled to reinstatement from voting in such an election. The district court concluded that it had jurisdiction of the subject matter, that the complaint stated a "prima facie cause of action," and that plaintiff company was entitled to an adjudication whether section 9(c)(3) required the issuance of regulations as a condition precedent to allowing economic strikers who have been permanently replaced to vote in a representation election. Accordingly, the court entered a preliminary injunction against the counting of the ballots, and this appeal followed. Consequently, we are squarely faced with the question whether under these facts the district court properly exercised its equity powers in enjoining the election proceedings despite the strong congressional policy not to interfere in such matters.

Jurisdiction over the subject matter of this complaint, at least for the limited purpose of determining whether relief may be granted, is furnished by 28 U.S.C. § 1337, since this is a civil action arising under an act regulating commerce.[4] The question whether the complaint asserts a claim upon which equitable relief may be properly granted, however, is, affected by the general congressional policy to afford "review" of matters arising under section 9 of the Act only after the Board has ordered the complaining party to take some affirmative action based upon the certification. In accord with this policy, the Supreme Court has held that a Board order certifying a particular labor organization as the exclusive bargaining representative for the employees in the unit is not a "final" order which may be reviewed by courts of appeals under section 10(f) of the Act. American Federation of Labor v. NLRB, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940). Consequently, certification orders are normally reviewable only when the Board petitions a court of appeals for enforcement of an order to bargain entered pursuant to section 8(a)(5).[5] The reason for severely circumscribing court interference in representation matters is to avoid dilatory tactics which would postpone the commencement of bargaining when the employer really had no substantial objections to the conduct of the election other than a desire to delay bargaining as long as possible.[6]

In a similar vein, the federal courts have restricted the use of their equity powers to restrain representation

---

amendments by § 606 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C.A. § 526 (Supp.1964).

4. See Empresa Hondurena de Vapores, S.A. v. McLeod (2 Cir. 1962) 300 F.2d 222, 226–227, vacated and remanded on other grounds, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963); Consolidated Edison Co. v. McLeod (S.D.N.Y.) 202 F.Supp. 351, aff'd., 302 F.2d 354 (2 Cir. 1962).

5. Section 9(d) of the Act specifically provides that whenever an order to cease

and desist from unfair labor practices is premised in part upon facts certified following a representation investigation, the entire record in the certification proceeding shall be included in the record on review.

6. See H.R. Rep. No. 972, 74th Cong., 1st Sess. 5–6; S.Rep. No. 573, 74th Cong., 1st Sess. 5–6; Boire v. Greyhound Corp., 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); Leedom v. Kyne, supra, 79 S.Ct. at 185, 3 L.Ed.2d at 216–217 (dissenting opinion).

proceedings to three very narrow situations. One exceptional set of circumstances is presented where the suit tenders "public questions particularly high in the scale of our national interest because of their international complexion." McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 17, 83 S.Ct. 671, 675, 9 L.Ed.2d 547, 552 (1963). Another exception, which has been fashioned primarily by the Second Circuit, comes into play where there is a substantial showing that Board action has violated the constitutional rights of the complaining party. See Fay v. Douds (2 Cir. 1949) 172 F.2d 720.[7] The third exception, on which the appellee relies strongly, is predicated on the Supreme Court's decision in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). There the court upheld a district court injunction setting aside a Board election and certification where the Board had clearly acted "in excess of its delegated powers and contrary to a specific prohibition in the Act." [8] 79 S.Ct. at 184, 3 L.Ed.2d at 214. The courts have generally interpreted Kyne as sanctioning the use of injunctive powers only in a very narrow situation in which there is a "plain" violation of an unambiguous and mandatory provision of the statute. See Eastern Greyhound Lines v. Fusco (6 Cir. 1963) 323 F.2d 477; Consolidated Edison Co. v. McLeod (S.D.N.Y.) 202 F.Supp. 351, aff'd. 302 F.2d 354 (2 Cir. 1962); Local 1545, United Bhd. of Carpenters v. Vincent (2 Cir. 1960) 286 F.2d 127; International Ass'n of Tool Craftsmen v. Leedom (1960) 107 U.S.App.D.C. 268, 276 F.2d 514. This exception has been applied to an affirmative requirement of the Act as well as a statutory prohibition See Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch (1963) 116 U.S.App.D.C. 243, 322 F.2d 993. Nevertheless, it seems clear that, in light of the congressional purpose behind limited review of certification proceedings, representation matters are enjoinable only where the fact of a statutory violation cannot seriously be argued and where the deviation resulted in a deprivation of a "right" guaranteed by the Act.[9]

7. In the instant case, the company alleges that the Board's contravention of the statute results in a denial of due process under the fifth amendment. However, a bare allegation that failure of the Board to issue regulations infringes a constitutional right is not substantial enough to vest jurisdiction in the district court or to furnish a basis for the exercise of its equity powers.

Perhaps it should be noted that most of the suits in which "jurisdiction" has been premised on an alleged denial of due process have been instituted by unions whose position as certified bargaining representative has been threatened by Board action independent of a departure from statutory requirements. See, e.g., Milk & Ice Cream Driver's Union, Local 98 v. McCulloch (D.C.Cir.1962) 113 U.S. App.D.C. 156, 306 F.2d 763; Leedom v. International Bhd. of Elec. Workers, Local 108 (1960) 107 U.S.App.D.C. 357, 278 F.2d 237; Fay v. Douds, supra. Furthermore, the cases have generally required a fairly substantial allegation of a denial of constitutional rights before jurisdiction has been assumed. For example, assertions of a denial of due process as the result of the retroactive application of a Board policy have been held insufficient to warrant injunctive relief. See Leedom v. International Bhd. of Elec. Workers, Local 108, supra; Local 1545, International Bhd. of Carpenters v. Vincent (2 Cir. 1960) 286 F.2d 127. In Fay v. Douds, supra, the denial of a hearing by the Board which allegedly resulted in a taking of property furnished the basis for "jurisdiction," although the court did not find the allegations meritorious. Furthermore, there is some question whether our prior decisions have recognized this exception, at least where an employer invokes it. See Volney Felt Mills v. LeBus (5 Cir. 1952) 196 F.2d 497, which expressly disapproves Worthington Pump & Mach. Corp. v. Douds (S.D.N.Y.1951) 97 F.Supp. 656.

8. In Kyne, the Board did not contest the union's allegation that the statutory prohibition had been breached. Therefore, the issue before the Supreme Court was narrowed considerably.

9. We do not read the recent Supreme Court decision in Boire v. Greyhound Corp., 84 S.Ct. 894, 11 L.Ed.2d 849 (1964) as expanding the Kyne decision to permit the use of the equity powers of

■■ The Board urges that this suit is premature since the company is seeking to enjoin·an election prior .to the termination of the election ·procedures. Since the .ballots have not been counted, the Board urges that we .cannot be certain that the union will obtain a majority of the votes and thus be entitled to certification. In Leedom v. Kyne, it is true that the union waited to bring its suit until after it had been certified as bargaining representative. However, in the instant case, the company challenges the validity of the entire election, just as the company involved did in Empresa Hondurena de Vapores, S.A. v. McLeod (2 Cir. 1962) 300 F.2d 222, 229. When this fact is taken into account, it seems clear that the time at which the suit is instituted has little relevance. This is certainly the implied holding of McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963). Hence, we hold that the suit was not prematurely instituted.

The Board also urges that Kyne can be distinguished from the instant case since in Kyne a certified union brought the action while in the instant case the complaint was filed by the employer. It is argued that the union's remedy by way of section 8(a) (5) is far more tenuous than the employer's remedy. While this argument might have merit as it relates to a union which has lost an election and ·thus has no remedy under the Act, it does not seem an entirely satisfactory explanation of Kyne. The employer's recourse in the instant case if the union is certified as the bargaining representative depends upon the occurrence of at least two contingencies: (1) the union must decide to file an unfair labor practice charge and (2) the Board

must sustain such charge and petition for enforcement of its order. In addition, the Act places a manifest hardship on the employer, for he must run the risk of incurring a meritorious unfair labor practice charge in order to challenge the validity of the election.[10] However, it must be assumed that Congress was aware of these obstacles to a challenge of election .procedures, and that it intentionally made it difficult for the employer to attack election procedures in order to insure that frivolous complaints were not ·utilized to bring about a postponement of collective bargaining. Therefore, we do not deem a distinction based upon the relative tenuousness of the union's remedy in Kyne entirely satisfactory. But see Volney Felt Mills v. LeBus (5 Cir. 1952) 196 F.2d 497 (per curiam). Furthermore, the Supreme Court did not make the distinction in McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963) or Boire v. Greyhound Corp., 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), which were both suits instituted by an employer in a situation similar to that of the Herald in the instant case.

We turn now to an examination of the nature of the company's suit to determine whether the alleged statutory violation is so manifest that the court's equity powers could properly be invoked. The company argues that the language of section 9(c) (3) places an unequivocal, mandatory duty on the Board to issue regulations governing the eligibility of economic strikers to vote in a representation election conducted within twelve months of the commencement of the strike, and that the Board's failure to issue regulations denies a right granted to

---

a district court to enjoin Board election proceedings whenever the issue is one turning "solely upon construction of the statute." 84 S.Ct. at 899, 11 L.Ed.2d at 849. The Court emphasized the limited nature of the Kyne exception and merely utilized the distinction between fact and law as a ready means of explaining the difference between that case and Kyne.

10. The company notes in its brief that it will be in danger of converting the economic strike which presently is in progress at its printing plant into an unfair labor practice strike if it is required to challenge the Board's election procedures by refusing to bargain with the union.

employers under the Act. In support of this assertion, the company points to excerpts from the legislative history of the 1959 amendment which indicate that Congress contemplated rule-making in accordance with the requirements of the Administrative Procedure Act [11] and intended that economic strikers should not be entitled to participate prior to the issuance of regulations.[12] To bolster this argument, the company notes that where Congress wished to vest the Board with discretion to choose whether to regulate a subject through the decisional process or through the promulgation of legislative rules, it utilized language explicitly recognizing those alternatives.[13] The Board counters this argument by pointing to section 14(c) (1), which was enacted by the same Congress that passed the amendment to section 9(c) (3). The Board urges that where that Congress intended to refer to legislative rule-making powers it knew how to do so; thus, 14(c) (1) provides: "The Board, in its discretion, may, by rule of decision or by *published rules adopted pursuant to the Administrative Procedure Act * * *."* (Emphasis supplied) Hence, the word "regulation" as used in section 9(c) (3) is not used as a term of art denoting the exercise of the Board's rule-making powers in conformity with the Administrative Procedure Act; instead it merely expresses the will of Congress that the Board be vested with regulatory power over the subject should the Board deem regulation desirable.[14] The Board also urges that the congressional debates on the proposed amendment to section 9(c) (3) clearly demonstrate that Congress did not intend to condition the voting eligibility of economic strikers on the promulgation of formal regulations. The amendment replaced an earlier sentence in 9(c) (3) which prohibited any economic strikers from voting, and the tenor of the entire debate on the amendment indicates that economic strikers should be enfranchised subject to whatever limitations as the Board might from time to time deem consistent with the purposes of the Act.[15] The Board notes that administrative agencies which are vested

---

11. In its brief the company sets out numerous statements from proponents of the amendment to § 9(c) (3). These statements, which were made during the congressional debate on the Labor Management Reporting and Disclosure Act, contain repeated references to the desirability of authorizing the Board to control the voting eligibility of economic strikers by "issuing" or "prescribing regulations." See 105 Daily Congressional Record 5732 (April 21, 1959), 5864 (April 23, 1959), 6850 (May 7, 1959), A7915 (Sept. 4, 1959).

12. For instance, Congressman Barden made the following statement:
"It is important to note that section **702** does not give employees engaged in an economic strike who are not entitled to reinstatement an unqualified right to vote. Rather this section provides that they shall be eligible to vote only under such regulations as the Board shall find are consistent with the purposes and provisions of this act."
105 Daily Congressional Record A8062 (Sept. 4, 1959).

13. See, e.g., 29 U.S.C. § 159(c) (2), (4); 29 U.S.C. § 160(c), where the statute refers to "regulations and rules of decision." The Board, however, stresses the fact that none of these sections were enacted by the same Congress that passed the 1959 amendments to § 9(c) (3).

14. In this connection, the Board calls attention to the statement of Senator Kennedy at 105 Cong.Rec. 5864:
"Our purpose is to permit economic strikers to vote while there is a lawful strike in progress, a strike for a reasonable and proper purpose, and to permit the Board to adopt a rule of reason in making a judgment as to when it would be wise to terminate the right."

15. For example, Senator Case stated:
"I personally think that to flatly deny the economic striker the right to vote would be to defeat his right to strike. I think the right to strike ought to be preserved, consistent with the provisions of the National Labor Relations Act. I offer the amendment with the intention to preserve that right, but also to put in the hands of the National Labor Relations Board the power to issue regulations consistent with the act, which would define the period of

with both rule-making and adjudicatory functions have some discretion whether to proceed by one method or the other in the absence of a clear congressional directive spelling out a particular method. See SEC v. Chenery Corp., 332 U.S. 194, 201–203, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995, 2002 (1947).[16] In controlling the voting eligibility of economic strikers, argues the Board, it chose to regulate through the evolution of decisional rules, approaching the problem on a case-by-case basis because the great number of conceivable factual variations make it eminently suitable for such development.[17] The company, of course, contends that this amounts to rule-making under the guise of adjudication without affording the affected persons the safeguards of the Administrative Procedure Act.

■ In view of the persuasive arguments which have been advanced on both sides of the question and the ambiguity of the legislative history, we cannot say the Board's violation of the statute, if any, is so manifest that it warrants the invocation of the equity powers of a district court prior to the issuance of a cease-and-desist order based upon the union's certification. In this connection, it should be noted that the application of the test formulated in Leedom v. Kyne can conceivably result in a refusal to en-join election proceedings even though the district court believes the plaintiff's complaint is meritorious.[18] However, it should be made clear that our analysis of the merits of the company's complaint is made only for the limited purpose of determining whether there has been such a plain contravention of a statutory mandate that the district court properly enjoined the counting of the ballots.

■ Perhaps a word should be said about the fact that this appeal was taken from the issuance of a preliminary injunction. According to the company, once we have determined that subject-matter jurisdiction exists, the issue resolves itself to a question whether the district court abused its discretion in restraining the counting of the ballots. However, as we understand the test the Supreme Court set up in Kyne, the question is really whether the complaint will support the exercise of equity jurisdiction at all, even though a sufficient injury can be shown to warrant injunctive relief. See Consolidated Edison Corp. v. McLeod, supra, 302 F.2d at 354.

■ One further point should be discussed. The company's complaint also asserts a right to injunctive relief based upon the fact that the Board vacated the election of July 25 because of an alleged infirmity in the review procedures employed. The company claims that the

---

time and the status of the striker who could vote."
·105 Cong.Rec. 5864.

16. The Board relies on our decision in Optical Workers' Union Local 24859 v. NLRB (5 Cir. 1955) 227 F.2d 687, 691, where we stated:

"We hold in accordance with the Chenery case, supra, that the Board has authority to adopt and reverse policy, either in the form of an individual decision or as rule-making for the future, in any manner reasonably calculated to carry out its statutory duties, without regard to whether such action strictly conforms to the rules applicable to courts or legislative bodies."

17. The basic test which has been developed by the Board in its decisions is whether the striker retains an interest in the struck job, as "where prior to the election he obtains *permanent* employment elsewhere; or the employer eliminates his job for economic reasons, or discharges, or refuses to reinstate him for misconduct rendering him unsuitable for re-employment." W. Wilton Wood, Inc., 127 N.L.R.B. 1675, 1677 (1960). The Board also presumes that the economic striker retains his status as an employee and that his replacement is permanent. See Pacific Tile & Porcelain Co., 137 N.L.R.B. 1358 (1962).

18. See Empresa Hondurena de Vapores, S.A. v. McLeod (2 Cir. 1962) 300 F.2d 222, at 229 n. 6, vacated and remanded on other grounds, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963) ; International Ass'n. of Tool Craftsmen v. Leedom (1960) 107 U.S.App.D.C. 268, 276 F.2d 514, 516.

Board's order vacating that election was held valid as between the Board and the company in a prior decision of the district court. Miami Herald Pub. Co. v. Boire (S.D.Fla.1962) 209 F.Supp. 561. While this question was not considered by the district court in reaching its conclusions, we feel that we should proceed to examine it at this time. We certainly recognize and adhere to the general principle that a reviewing court should remand a case to the district court for consideration of a question not previously considered there, but we think that in the peculiarly compelling circumstances of the instant case we should dispose of the company's additional allegation. The outcome of this election has already been delayed for over two years. The record does not present a question which involves the resolution of any factual disputes. Furthermore, the company's contention appears clearly without merit. The district court dismissed this suit previously because the Board had vacated its election order and granted the petition for review. The court did not purport to decide that the vacation of the election order was final and valid for all purposes, but merely that the Board could temporarily vacate its own election orders in an attempt to remedy a procedural defect, thus rendering moot the litigation which was then pending. Furthermore, we think that, assuming there was a procedural infirmity because the petition for review was initially denied by only one member of the Board, its subsequent action in granting the petition remedies the defect. See Miami Printing Pressmen's Union Local 46 v. McCulloch (D.C.Cir.1963) 322 F.2d 993.

We realize that our disposition of round three of litigation in this case paves the way for round four, which could conceivably occur when the company refuses to bargain on the ground the Board could not permit economic strikers to vote in a representation election without first promulgating rules to govern their eligibility. Nevertheless, we feel the congressional policy of severely circumscribing review of representation matters requires that no injunction be issued at this stage.

The case is reversed and remanded to the district court with directions to dismiss the complaint.