**TEAMSTERS, CHAUFFEURS, HELPERS AND DELIVERY DRIVERS, LOCAL 690, Appellant,**

v.

**NATIONAL LABOR RELATIONS BOARD, Appellee.**

No. 20506.

United States Court of Appeals
Ninth Circuit.

March 3, 1967.

Hugh Hafer, Bassett, Donaldson & Hafer, Seattle, Wash., David Previant, Goldberg, Previant & Uelmen, Milwaukee, Wis., Albert Brundage, Los Angeles, Cal., for appellant.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomon I. Hirsh, Herman M. Levy, Attys., N.L.R.B., Washington, D. C., Pat-

rick H. Walker, Regional Atty., N.L.R.B., Seattle Wash., for appellee.

Before KOELSCH and ELY, Circuit Judges, and FOLEY, Jr., District Judge.

FOLEY, Jr., District Judge.

This is an appeal from an order of the District Court for the Eastern District of Washington dismissing Appellant's amended complaint for lack of subject matter jurisdiction. Appellant sought to have the District Court set aside a decision made by the National Labor Relations Board and to order the Board to conduct an election.

Appellant filed a petition with the Board pursuant to Section 9(c) of the National Labor Relations Act, as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq.), hereinafter called "the Act", seeking to be certified as bargaining representative for some thirty-five truck drivers employed by the Boise Cascade Corporation. The Appellant urged the Board to find that a craft unit limited to truck drivers or truck drivers and mechanics was appropriate and that those employees should be severed from the existing plant unit comprising all of the employer's production and maintenance employees currently represented by the Lumber and Sawmill Workers Union. The employer and incumbent union urged that the larger production and maintenance plant unit was appropriate and that the Board should refuse to sever the craft unit.

After a full hearing, the Board filed its written decision and order (148 NLRB No. 53 (1964)), holding that the truck drivers involved were functionally and administratively in the basic lumber industry and stated in part:

" * * * Nor do we find persuasive the Petitioner's [Appellant's] contention that the Board should abandon the *Weyerhaeuser principle.* We therefore find that the only appropri-

ate unit * * * is a production and maintenance unit [plant unit] and that the unit sought by the Petitioner is not appropriate." (Italics added.)

In the District Court, the Appellant contended that the Board's adherence to the "Weyerhaeuser principle" constituted a clear violation of Section 9(b) (2) of the National Labor Relations Act, as amended in 1947, and violated the due process of law clause of the Fifth Amendment to the Constitution of the United States. Appellant sought in the District Court an order setting aside the Board's decision refusing to carve a craft unit out of the existing plant unit, and further sought an order from the Court directing the Board to conduct a representation election among the employees for whom the craft unit was sought. The District Court, without opinion, dismissed the amended complaint for lack of subject matter jurisdiction and this appeal followed. This Court has jurisdiction (28 U.S.C. § 1291).

The question for this Court is whether or not the District Court had jurisdiction to review the Board's decision refusing to sever a craft unit from the existing plant unit and to order an election for the employees within the proposed craft unit.

■ Appellant contends that Section 24 of the Judicial Code clothed the District Court with jurisdiction.[1] This would be true but for the provisions of the National Labor Relations Act limiting the District Court's general jurisdiction. Normally, under the Act, a Board order in the representation proceeding under Section 9(c) cannot be reviewed in the courts. When final orders of the Board, entered at the culmination of an unfair labor practice proceeding under Section 10 of the Act, are reviewed in the Court of Appeals, Section 9(d) provides for judicial review in that Court of the underlying determination in the rep-

---

1. 28 U.S.C. § 1337:
 "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

resentation proceeding. American Fed. of L. v. National L. Rel. Bd., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210; Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849.

The federal courts have consistently refused to allow direct judicial review of Board orders made in representation proceedings. In certain extraordinary circumstances, a District Court's review of Board orders in representation proceedings has been allowed:

(1) where the Board has acted in excess of its powers, has violated a clear mandatory requirement of statute;

(2) where there is involved a public question of considerable national interest with international overtones; and

(3) where there is a substantial showing that the constitutional rights of the complaining party were violated.

The first two exceptional circumstances are described by the Supreme Court in Boire v. Greyhound Corp., supra. At page 898 of 84 S.Ct., at page 854 of 11 L.Ed.2d, we find:

" * * * In Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210, despite the injunction of § 9(b) (1) of the Act that 'the Board shall not (1) decide that any unit is appropriate * * * if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit,' the Board—without polling the professional employees—approved as appropriate a unit containing both types of employees. The Board conceded in the Court of Appeals that it 'had acted in excess of its powers and had thereby worked injury to the statutory rights of the professional employees.' 358 U.S. at 187, [79 S. Ct., at 183,] 3 L.Ed.2d 210 [at 213]. We pointed out there that the District Court suit was 'not one to "review," in the sense of that term as used in the Act, a decision of the Board made

within its jurisdiction. Rather it is one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act.' 358 U.S. at 188, [79 S.Ct., at 184,] 3 L.Ed.2d 210 [at 214]. Upon these grounds we affirmed the District Court's judgment setting aside the Board's 'attempted exercise of [a] power that had been specifically withheld.' 358 U.S. at 189, [79 S.Ct. at 184,] 3 L.Ed.2d 210 [at 214]. And in McCulloch v. Sociedad Nacional, 372 U.S. 10, [83 S.Ct. 671,] 9 L.Ed.2d 547, in which District Court jurisdiction was upheld in a situation involving the question of application of the laws of the United States to foreign-flag ships and their crews, the Court was careful to note that 'the presence of public questions particularly high in the scale of our national interest because of their international complexion is a uniquely compelling justification for prompt judicial resolution of the controversy over the Board's power.' "

In making further reference to *Kyne,* the Court stated at page 899 of 84 S.Ct., at page 855 of 11 L.Ed.2d:

" * * * The Kyne exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law. Judicial review in such a situation has been limited by Congress to the courts of appeals, and then only under the conditions explicitly laid down in § 9(d) of the Act."

The third exceptional circumstance is set forth by the Second Circuit in Fay v. Douds, 1949, 172 F.2d 720, at 723:

" * * * The plaintiff * * * asserts that the Local has a 'property' right in the maintenance of its position as exclusive bargaining agent, and that this was substantially invaded by denying its privilege of a hearing upon

the 'investigation,' preparatory to deciding whether an election should be called. *If this assertion of constitutional right is not transparently frivolous, it gave the District Court jurisdiction; * * *"* (Italics added.)

The Courts of Appeal have considered the three exceptional circumstances in many cases, among which, pertinent here, are:

Boire v. Miami Herald Publishing Company, 5 Cir., 1965, 343 F.2d 17, at page 20, cert. denied 382 U.S. 824, 86 S.Ct. 56, 15 L.Ed.2d 70:

"In a similar vein, the federal courts have restricted the use of their equity powers to restrain representation proceedings to three very narrow situations. One exceptional set of circumstances is presented where the suit tenders 'public questions particularly high in the scale of our national interest because of their international complexion.' * * * Another exception, which has been fashioned primarily by the Second Circuit, comes into play where there is a substantial showing that Board action has violated the constitutional rights of the complaining party. * * * The third exception, on which the appellee relies strongly, is predicated on the Supreme Court's decision in Leedom v. Kyne * * *. There the court upheld a district court injunction setting aside a Board election and certification where the Board had clearly acted 'in excess of its delegated powers and contrary to a specific prohibition in the Act.' * * * The courts have generally interpreted Kyne as sanctioning the use of injunctive powers only in a very narrow situation in which there is a 'plain' violation of an unambiguous and mandatory provision of the statute. * * * This exception has been applied to an affirmative requirement of the Act as well as a statutory prohibition * * *."

Leedom v. Norwich, Conn. Print. Special. & P. P. Union, 1960, 107 U.S.App.

D.C. 170, 275 F.2d 628, at page 630, cert. denied 362 U.S. 969, 80 S.Ct. 955, 4 L.Ed.2d 900:

"Our question is not whether on the one hand the unit sought by Local 494 and the International, or, on the other hand, the unit fixed by the Board, is the appropriate bargaining unit, but whether the Board in reaching its decision as to the unit disregarded any statutory limitation upon the discretion vested in the Board by section 9 (b) of the Act; that is, whether the craft employees were denied a statutory right. If the latter, the District Court, under the authority of Leedom v. Kyne * * * should be upheld in granting the preliminary injunction and in not dismissing the complaint. If the Board merely exercised the discretion available to it, however, the District Court was without jurisdiction and erred in enjoining the election. Review of the appropriateness of the unit in that event could be had only in a proceeding in a United States Court of Appeals under section 10(e) or 10(f) of the Act. * * *

"We do not find in the foregoing a violation of section 9(b) (2). The Board decision that the craft unit was inappropriate was not on the ground that a different unit had been established by a prior Board determination, but on the ground that the union seeking the craft unit was not a traditional representative of a specific craft. The mere reference to past bargaining history for 'additional support' we think cannot be construed in the circumstances of this case as deciding 'that any craft unit is inappropriate * * on the ground that a different unit has been established by a prior Board determination.'"

International Ass'n of Tool Craftsmen v. Leedom, 1960, 107 U.S.App.D.C. 268, 276 F.2d 514, at page 516, cert. denied 364 U.S. 815, 81 S.Ct. 45, 5 L.Ed.2d 46:

"The jurisdiction of the District Court to grant relief in this original

equity suit depends upon a clear showing that the Board acted 'in excess of its delegated powers and contrary to a specific prohibition in the Act,' * * *.

"We need not decide whether we would sustain the Board's view if the question were presented to us in an appeal under the judicial review provisions of § 10 of the Act. * * * We need only decide, as we do, that the statutory language itself and the legislative history sufficiently support its position to eliminate the essential requirement for invoking the District Court's equity jurisdiction, namely, a showing that the Board violated a 'clear and mandatory' statutory prohibition by according controlling consideration to bargaining history. * * *

"Appellant also suggests that the Board has evaded its statutory duty to determine the 'appropriate unit' by dismissing the craft severance petitions, without a hearing, on the ground that they were not coextensive with the existing bargaining unit. Section 9(b) requires the Board to determine 'in each case' which unit will 'assure to employees the fullest freedom in exercising the rights guaranteed by this Act * * *.' The Board did not say why employees cannot exercise the fullest freedom in collective bargaining unless severance petitions are coextensive with the existing unit. But the question of an appropriate bargaining unit falls within 'the wide area of determinations which depend on the Board's expertise and discretion,' * * and the statute does not specify any matters pertinent here which the Board must consider to insure such freedom. Consequently, we cannot say that the Board's procedure has violated any 'clear and mandatory' provision of the Act. * * * What factors the Board considered and what weight it accorded to them are questions which may only be raised in a judicial review proceeding under § 10."

Department & Specialty Store Emp. Union v. Brown, 9 Cir., 1961, 284 F.2d 619, at 624:

"Under ordinary circumstances, the decisions of the National Labor Relations Board in representation proceedings are reviewable only in the Courts of Appeal. The District Courts have no jurisdiction unless there is a showing of unlawful action by the Board and resulting injury, by departure from statutory requirements or those of due process. * * *"

Local 1545, United Bro. of Carpenters, etc. v. Vincent, 2 Cir., 1960, 286 F.2d 127, at 132:

"If appellant is to prevail, it must therefore be on the basis that Leedom v. Kyne cannot rationally be restricted to the case of flouting a clear statutory command but must be taken to recognize jurisdiction of the District Court to enjoin representation orders whenever there is a colorable allegation that the Board has misread the declared will of Congress and the remedy afforded by § 9(d) is likely to prove inadequate. * * * Up to this point, at least, there has been no tendency to expand the exception. Since Leedom v. Kyne, the Court of Appeals for the District of Columbia, where most suits to enjoin the Board have been brought in order to avoid the problem whether regional directors are sufficient parties defendant, has resisted every effort to apply that decision to orders in § 9(c) proceedings, alleged to violate statutory or constitutional commands, * * *. To be sure, the distinction between violation of a clear and of a not so clear statutory command is neither completely satisfying nor, save where violation is conceded, as it was in Leedom v. Kyne, readily applied. However, the distinction seems to us to have been made by the Supreme Court in carving out what was intended to be a narrow exception to a rule that is founded on important considerations of history and policy. Applying the distinction, we think the most the appellant has shown is a possible excess of zeal by

the Board in reading the will of Congress and consequent use of an erroneous standard in withdrawing the protection of its contract-bar rule; there was no violation of a 'clear statutory command' or, indeed, as we read § 8(e), of any command at all."

Machinery, Scrap Iron, Metal & Steel, etc. v. Madden, 7 Cir., 1965, 343 F.2d 497, at page 499, cert. denied 382 U.S. 822, 86 S.Ct. 53, 15 L.Ed.2d 69:

"The District Court agreed that jurisdiction was lacking to entertain an action of a labor organization * * * to set aside the Board's determination unless that determination clearly transgressed a mandatory requirement of the statute or violated Constitutional provisions. * * *

"We agree with appellee's contention that jurisdiction must rest on more than a mere allegation of unauthorized Board action. A prerequisite to review of the Board's order is the determination by the District Court that there is a violation of a clear and mandatory provision of the Act. In Kyne, on which plaintiff relies, the Board admitted that the action of which the union there complained did contravene a specific prohibition of the Act.

"As the District Judge noted, the opinion in Boire v. Greyhound Corp., 1964, 376 U.S. 473, 481, 84 S.Ct. 894, 11 L.Ed.2d 849, refers to the factual nature of the issue before it as contrasted with the legal issue of Kyne which depended on construction of a statute. Nevertheless, we cannot agree that District Court review of the Board action under § 9 of the Act is not subject to similar limitations whether the error alleged is one of fact or law."

I

Appellant contends that the Board, in adhering in this case to the principle it laid down in Weyerhaeuser Timber Company, 87 NLRB 1076 (1949), acted in contravention of the specific statutory mandate of § 9(b) (2) of the Act. Section 9 (b) of the Act provides:

"The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: *Provided,* That the Board shall not * * * (2) decide that any craft unit is inappropriate for such purposes on the ground that a different unit has been established by a prior Board determination, unless a majority of the employees in the proposed craft unit vote against separate representation. * * * " [2]

The second sentence quoted (subsection (2) of Section 9(b)) was one of several amendments contained in the Labor-Management Relations Act of 1947 popularly known as the "Taft-Hartley Act".

While Congress was considering amending Section 9(b) by the addition of subsection 2, the following appears in Senate Report 105 on S. 1126 (Vol. 1, Leg.Hist. of the Labor-Management Relations Act of 1947):

"Generally speaking, in plants which have not been organized, the Board has provided an opportunity for craftsmen to vote in a separate unit and thus secure representation of their own if the vote reflects that desire (Globe Machine and Stamping Company, 3 NLRB 294). Where a company has already been organized, however, the Board does not apply this doctrine unless it is consistent with prior bargaining history. Since the decision in the American Can case (13 NLRB 1252), where the Board refused to permit craft units to be 'carved out' from a broader bargaining unit already established, the Board, except under unusual circumstances, has virtually compelled skilled artisans to remain parts of a comprehensive plant unit. The com-

---

2. The truck drivers sought a separate craft unit and did not favor the retention in the plant unit. They did not vote.

mittee regards the application of this doctrine as inequitable.

"Our bill still leaves to the Board discretion to review all the facts in determining the appropriate unit, but it may not decide that any craft unit is inappropriate on the ground that a different unit has been established by a prior Board determination * * * Section 9(b): The several amendments to this subsection propose to limit the Board's discretion in determining the kind of unit appropriate for collective bargaining * * * (2) In determining whether members of a craft unit may be separated from a larger unit the Board may not dismiss a craft petition on the ground that a different unit has been established by a prior determination. This overrules the American Can rule (supra)."

Senator Taft, in discussing the subsection (2) amendment to Section 9(b) (93 Cong.Rec. 3836 of Vol. 2, Leg.Hist. of Labor-Management Relations Act of 1947) said:

" * * * In the third place, we have provided further protection for craft unions. Today the situation is that when a new plant is organized the Board ordinarily permits the craft members of that plant to vote as to whether they will have a special craft union or join a general plant union. The Board has followed the desires of the craft unit on that question. But if at the time of the first certification a craft unit is not organized, or if no action is taken, and if by default they are all included in a plant union which is certified to the Board, the Board has taken the position that after 1 year of such bargaining no craft union will be recognized or given an opportunity to be heard in connection with establishing a craft unit.

"All this bill does is to provide that such a previous finding shall not have that effect, and that if a year later, the craft people want to form a separate union they shall have the same consideration at that time as they would have

had if they had taken that action when the plant was first organized. In effect it gives greater power to the craft units to organize separately. It does not go the full way of giving them an absolute right in every case; it simply provides that the Board shall have discretion and shall not bind itself by previous decision, but that the subject shall always be open for further consideration by the Board."

The Fourth Circuit, in N.L.R.B. v. Pittsburgh Plate Glass Co., 1959, 270 F. 2d 167, at page 172, cert. denied 361 U.S. 943, 80 S.Ct. 407, 4 L.Ed.2d 363, in reviewing the effect of the 1947 amendment, stated:

"As amended § 9(b) does not strip the Board of its original power and duty to decide in each case what bargaining unit is most appropriate to assure to the employees the fullest freedom in collective bargaining, whether it be an employer unit, craft unit, plant unit or subdivision thereof. It merely tells the Board that it must not decide that a craft unit is inappropriate in a particular case on the ground that a different unit had been established by it in a prior determination. *In effect it frees the Board from the domination of its past decisions and directs it to re-examine each case on its merits and leaves it free to select that unit which it deems best suited to accomplish the statutory purposes.* [Italics added.] Undoubtedly the legislative debates and the committee reports indicated dissatisfaction on the part of members of Congress with the rigid attitude of the Board in adhering to its prior decisions; but Congress clearly did not command the Board, as it could have done, to establish a craft bargaining unit whenever requested by a qualified craft union, or relieve the Board of its duty to consider the interests of the plant unions and the wishes of the employees who desire to bargain on a plantwide basis. The amended section expressly requires the Board to decide *in each case* what unit would be most appropriate to effectuate the overall

purpose of the Act to preserve industrial peace."

In 1948, in National Tube Company, 76 NLRB 1199, the Board considered the effect of the newly enacted Section 9(b) (2) on its determinations in representation proceedings and reached the conclusion that:

"(1) the only restriction imposed by Section 9(b) (2) is that a prior Board determination cannot be the *basis* for denying separate representation to a craft group; (2) under the language of the statute there is nothing to bar the Board from considering either a prior determination or the bargaining history of a particular employer as a factor, even if not controlling, in determining the appropriateness of a proposed craft unit; (3) there is nothing in either statute or legislative history to preclude the Board from considering or giving such weight as it deems necessary to the factors of bargaining history in an industry, the basic nature of the duties performed by the craft employees in relation to those of the production employees, the integration of craft functions with the over-all production processes of the employer, and many other circumstances upon which the Board has customarily based its determination as to the appropriateness or inappropriateness of a proposed unit."

Thereafter, the Board extended its *National Tube* doctrine to the lumber industry.[3]

In Weyerhaeuser Timber Company, 87 NLRB 1076 (1949), at pages 1081 and 1082, the Board stated:

"We are cognizant of the fact that from the very inception of collective bargaining in the lumber industry, the 'industrial' or 'vertical' unit comprising all production and maintenance workers has been, almost without exception, the bargaining unit chosen and utilized by both labor and management

* * *. We have noted, in previous cases, the historically consistent and uniform absence of craft groups from the processes of bargaining in the lumber industry. We have also ascertained, in other cases, that the methods of production in the industry, from the cutting of timber to the manufacture of finished board, are such that a stoppage anywhere in the line of production would bring all operations to a halt.

" * * * Each phase of the production and manufacture of finished lumber from standing timber requires the constant integration and coordination of many groups of well trained and highly specialized personnel * * *. The development of successful maintenance and production processes and methods in the lumber industry has been accomplished by an integration and specialization which has foreclosed the existence of distinct and well defined craft work. In view of the comprehensive and consistent history of industrial bargaining, the extensive integration of all production and maintenance work, and the fact that the industry has tended to develop specialists rather than workmen in the craft tradition, we believe that separate craft representation is not appropriate for employees in the lumber industry."

In 1954, in American Potash & Chemical Corporation (107 NLRB 1418), the Board laid down these standards: (a) the intent of Congress expressed in Section 9(b) (2) would be best carried out by a finding of the Board that a craft group would be appropriate for severance purposes in cases where a true craft group is sought and where, in addition, the union involved has traditionally represented that craft; (b) Section 9(b) (2) requires the Board to give the members of the true craft group the opportunity to decide for themselves whether or not a craft unit should be severed; (c) the true craft group should not be denied

3. The Board also extended the National Tube rule to the wet milling industry (Corn Products Refining Co., 80 NLRB 362 (1948)) and to the aluminum industry (Permanente Metals Co., 89 NLRB 804 (1950)).

separate representation merely because they are employed in a highly integrated industry with a history of industry or plant-wide bargaining. However, the Board limited the new rules it had just announced by stating that it would continue to decline craft severance in those highly integrated industries to which it had already applied *National Tube* and where industry or plant-wide bargaining prevailed, but announced that the *National Tube* doctrine would not be further extended.

In other words, the Board established the rule that if a true craft unit was sought and there was traditional representation by the union involved, it would no longer deny craft severance merely because of the integrated nature of the industry and a history of industry or plant-wide bargaining, except in those cases where it had theretofore applied the *National Tube* doctrine, to wit, steel, wet milling, aluminum and lumber. In these industries, the so-called "four favorite industries", it would continue to deny craft severance where production and maintenance processes are highly integrated and where there was a history of industry or plant-wide bargaining.[4]

In 1966, in Mallinckrodt Chemical Works (162 NLRB No. 48), the Board reversed *American Potash*. We quote, in part, from *Mallinckrodt:*

> "It is apparent that the decision in *American Potash* was predicated in substantial part on the view that Section 9(b) (2) virtually forecloses discretion and compels the Board to grant craft severance. This view represented an almost diametrically opposite construction of the statute from that adopted by the Board in *National Tube.* * * * we believe the revised construction of the statute adopted in *American Potash* was erroneous, * *
>
> "Furthermore, the *American Potash* decision makes arbitrary distinctions between industries by forbidding the application of the *National Tube* doc-

trine to other industries whose operations are as highly integrated, and whose plantwide bargaining patterns are as well established, as is the case in the so-called '*National Tube*' industries. In fact, the *American Potash* decision is inherently inconsistent in asserting that '* * * it is not the province of this Board to dictate the course and pattern of labor organization in our vast industrial complex,' while, at the same time, establishing rules which have that very effect. Thus, *American Potash* clearly 'dictate[s] the course and pattern of labor organization' by establishing rigid qualifications for unions seeking craft units and by automatically precluding severance of all such units in *National Tube* industries.

> "It is patent, from the foregoing, that the *American Potash* tests do not effectuate the policies of the Act. We shall, therefore, no longer allow our inquiry to be limited by them. Rather, we shall, as the Board did prior to *American Potash*, broaden our inquiry to permit evaluation of all considerations relevant to an informed decision in this area."

When the Board in this case refused craft severance, it did so with its *National Tube* and *Weyerhaeuser* decisions in mind. The *American Potash* doctrine, now repudiated by *Mallinckrodt,* could not have been considered because the *American Potash* doctrine excepted the *National Tube* industries, and, of course, *Mallinckrodt* had not been decided at the time of the Board's decision in this case.

■ It is not for this Court nor for the District Court below to decide whether correct standards were established and applied by the Board in the various cases decided by it after subsection (2) was added to Section 9(b) in 1947, so long as the Board in the case at bar has not "failed to give effect to a clear statutory command * * * so as to justify intervention by the District Court in the normal process of determining an appropri-

---

4. Cf. the Fourth Circuit's discussion in NLRB v. Pittsburgh Plate Glass Co., supra.

**976**

ate bargaining unit under the Act." [5] If it is not clear in this case that the Board ignored the prohibition of Section 9(b)(2), then it matters not to this Court whether the Board's decisions from *National Tube* to *Mallinckrodt* are correct because unless the Board flaunted a clear statutory command, plainly violated a mandatory provision of statute, the District Court may not interfere with the exercise of the Board's expertise, it may not reach into the Board's discretionary area of unit determination.

We turn, now, to the question, did the Board violate the prohibition of Section 9(b)(2) by adhering to the *"Weyerhaeuser* principle"?

 The employee group, here, seeking a craft unit, did not, under Section 9(b)(2), have an absolute right to organize separately, but was entitled to have their petition given the same consideration by the Board after the maintenance and production plant unit had been established as before the plant unit was established. The Board had the authority and the duty to decide what bargaining unit was appropriate, but in doing so, it was required to keep foremost in mind the declared policy of Congress that employees be given the fullest freedom in choosing their bargaining unit. This means that unless there were in the Board's expert judgment sound reasons why the craft unit sought was inappropriate, the desires of the craft group must prevail. The Board may not, whether or not it considers the evidence before it, reject the application for craft severance on the ground that it had already decided, in *Weyerhaeuser*, that craft units were inappropriate in the lumber industry. But the Board may, as it did here, after considering the evi-

dence before it and after a re-examination of its prior decision in *Weyerhaeuser*, find that the craft unit sought was inappropriate for certain given reasons, either specifying them or, as it did here, by making reference to the *Weyerhaeuser* decision where the reasons were fully set forth. We perceive no valid reason that would compel the Board in supporting its decision to reiterate those reasons rather than to simply employ *Weyerhaeuser* as a convenient frame of reference.

In such circumstances, the Board has not rejected the craft unit sought based alone upon precedent, but has decided, after considering the facts and re-examining the *Weyerhaeuser* decision, that the reasons previously given in *Weyerhaeuser* supporting the plant unit as opposed to a craft unit are still valid. We hold the Board did not violate the prohibition of Section 9(b)(2).[6]

## II

 Finally, Appellant contends that the District Court has jurisdiction on the ground that the Board's decision violated the due process clause of the Fifth Amendment to the Constitution. Appellant makes three points:

(1) That the Board's order violated the prohibition of Section 9(b)(2) of the Act.

(2) That the Board's refusal to permit craft severance of the lumber industry creates an arbitrary distinction and has no logical, historical, factual or legal basis.

(3) That there was no rational basis for the Board's finding that the employees for whom craft representation was sought are functionally and administratively in the basic lumber industry.

---

5. Quoted portions from Leedom v. Norwich, Conn. Print. Special. & P. P. Union, 1960, 107 U.S.App.D.C. 170, 275 F.2d 628, at 631.

6. The Board, in footnote numbered 17 in the *Mallinckrodt* case, stated: "To the extent that the decisions in National Tube Company, supra, Permanente Metals Co., supra, Corn Products Refining Company,

supra, Weyerhaeuser Timber Company, supra, and decisions relying thereon, may be read as automatically foreclosing craft or departmental severance or the initial formation of such units in unorganized plants in the industries involved, they are hereby overruled." This Court does not so read *Weyerhaeuser*. *Weyerhaeuser* did not automatically foreclose craft severance.

977

We have already disposed of the Appellant's first point. It seems to us that all the Appellant is saying in its second and third points is that the Board action, here, was arbitrary, unreasonable, unwise and an abuse of discretion. Appellant attempts to couch these arguments in constitutional terms. We hold the contention that the Board's action violated the due process of law clause of the Fifth Amendment to be "transparently frivolous" (Fay v. Douds, supra).

The District Court did not have jurisdiction to review the Board's decision refusing to sever a craft unit from the existing plant unit and to order an election of the employees within the proposed craft unit.

The order of the District Court dismissing the amended complaint for lack of jurisdiction of the subject matter is affirmed.