The BULLARD COMPANY, Plaintiff,

v.

NATIONAL LABOR RELATIONS BOARD, Frank W. McCulloch, John H. Fanning, Gerald A. Brown, Howard Jenkins, Sam Zagoria, Members of the Board, Ivan C. McLeod, Regional Director for the Second Region, Defendants.

Civ. A. No. 651–66.

United States District Court
District of Columbia.

April 5, 1966.

Jerome Ackerman and John S. Koch, of Covington & Burling, Washington, D. C., for plaintiff.

Marcel Mallet-Prevost, Arnold Ordman, Gen. Counsel, N. L. R. B., Dominick L. Manoli, Solomon I. Hirsh, and Warren M. Laddon, Washington, D. C., for defendants.

GASCH, District Judge.

This cause came on for hearing on plaintiff's motion for preliminary injunction and defendants' motion to dismiss or in the alternative for summary judgment. It appears that the facts are essentially as follows:

The Bullard Company is a Connecticut corporation engaged in the manufacturing of machine parts. On October 29, 1965, pursuant to a petition filed by the International Molders & Allied Workers Union (hereinafter called the Union), the National Labor Relations Board conducted a representation election. Out of 248 eligible voters, 234 ballots were cast; 119 against the Union, 109 were for the Union, and 6 ballots were challenged. On November 3, 1965, the Union filed objections to this election with the Regional Director. The objections stated:

> "(a) He [the Board Agent] carried ballots in his pocket. These ballots had been previously folded

and many of the voters received these folded ballots from the pocket of the Board Agent.

"(b) One voter, Walter G. Wright, received a folded ballot, which the Board Agent had taken from his pocket, and upon unfolding it in the polling booth. noticed that a mark had previously been placed in the 'No' box. Not understanding how Board elections are conducted, Wright, nevertheless, placed the ballot in the ballot box. When he returned to his work station and told his fellow workers of the incident, they advised that he return to the polls. Wright did so, and was given another ballot by the Board Agent. which Wright voted as a challenged ballot.

"(c) The Board Agent went out to lunch with Company representatives and officials.

"(d) The Board Agent constantly protested when observers of petitioner sought to challenge ballots.

"(e) The Board Agent, during the conduct of the election, constantly wandered off from the polling place and on numerous occasions had to be called back in order to proceed.

"(f) After the election, the Board Agent took from his brief case what appeared to be crumpled ballots."

The Regional Director recommended that the Union's objections be overruled. He found that the carrying of ballots in the Board Agent's pocket was a reasonable security device. He found that the allegation of Walter G. Wright was unsupported and even if it were, it had no effect on the election as a whole. He found nothing improper concerning the Board Agent's having lunch in that portion of the cafeteria usually reserved for management. He found that the Board Agent in no way attempted to dissuade the Union's observers from exercising their right to challenge ballots. He found that the Board Agent was never out of sight of the polling booth. Finally, he found that the ballots appearing in the Board Agent's briefcase were merely duplicates and that the Board Agent kept them in his briefcase for safekeeping. The Regional Director concluded that there was no merit in the Union's contentions and that the election should not be set aside. Whereupon, the Union filed a timely appeal to the Board and on February 25, 1966, a three-member panel of the Board (one member dissenting), made the following finding:

"The objections relate to alleged irregularities by the Board agent conducting the election. Although, as the Regional Director concluded, *the Board agent did not in fact engage in any irregularities, there is a possibility that some of his conduct may erroneously have given such an appearance.* The mere appearance of irregularity in a Board agent's conduct of an election departs from the standards the Board seeks to maintain in assuring the integrity and secrecy of its elections and constitutes a basis for setting aside the election.

"In the circumstances of this case, we hereby sustain the objections.

"Accordingly, we shall set aside the election and direct that a second election be held." (Emphasis supplied.)

Plaintiff seeks to enjoin the second election, and seeks to compel certification of the October 29 election. Plaintiff relies primarily on § 9 of the Act, 29 U.S.C. § 159, which provides in pertinent part:

(e) (1) * * * [T]he Board shall take a secret ballot of the employees in such unit and certify the results thereof to such labor organization and to the employer.

(2) No election shall be conducted pursuant to this subsection in any bargaining unit or any subdivision within which, in the preceding twelve-month period, a valid election shall have been held.

Plaintiff argues that, since the election was admittedly valid, the Board was under a mandatory statutory duty to certify the results thereof.

In certification proceedings, the equity jurisdiction of district courts is limited. The general rule is that orders of the Board are judicially reviewable only under § 10 of the Act.[1] This rule has three exceptions: (1) where the Board action results in a denial of a constitutional right;[2] (2) where the suit concerns "public questions particularly high in the scale of our national interest because of their international complexion";[3] and (3) where the Board has acted in excess of its delegated powers and contrary to a specific prohibition in the Act.[4] The Court is of the opinion that the instant case revolves around a determination of whether jurisdiction lies through the *Leedom v. Kyne* exception.

In *Leedom v. Kyne,* the Supreme Court held that a district court could entertain a suit to vacate an N.L.R.B. certification which clearly exceeded the Board's statutory authority. The case involved the formation of an association to represent certain professional employees. When the association petitioned for N.L.R.B. certification, the Board allowed intervention by a competing labor organization which sought to include the professional employees within its ranks. The Board found that these additional employees should be included in the larger bargaining unit on the theory that both groups shared a unity of interest. The Board refused to hold an election to determine whether the professional employees desired inclusion in the mixed unit. The Board did, however, hold an election among all employees as to which union was to represent them. The professional association won the election, but then filed suit to vacate the certification order alleging that the Board had exceeded its statutory power by including the professional employees in the mixed group without their consent. The Supreme Court held that the district court had jurisdiction to entertain the suit, reasoning that " 'if the absence of jurisdiction of the federal courts meant a sacrifice or *obliteration of a right which Congress had created,* the inference would be strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control.' "[5] In view of the allegations of the plaintiff in the instant case, the Court finds it necessary to consider whether an employer can avail itself of the *Leedom v. Kyne* exception.

The Court can find no authority for the proposition that the *Leedom v. Kyne* exception is denied an employer simply because it is an employer. In *Miami Newspaper Printing Pressmen's Union, Local 46 v. McCulloch,* 116 U.S.App.D.C. 243, 322 F.2d 993 (1963), in *dictum,* the Court of Appeals stated:

> "Indeed, this Court has recognized that the *Leedom v. Kyne* remedy was not devised for the benefit of an employer."[6]

The case relied upon for this statement was *Atlas Life Insurance Company v. Leedom,* 109 U.S.App.D.C. 97, 284 F.2d 231 (1960). In *Atlas,* the employer sought an injunction to invalidate certification of a union on the ground that no hearing had been held as to the compliance by the union with the affidavit requirements of the Act. The Court of Appeals held that there was an adequate legal remedy which militated against the

---

1. 29 U.S.C. § 160(f).

2. Fay v. Douds, 172 F.2d 720 (2d Cir. 1949).

3. McCulloch v. Sociedad Nacional de Marineros de Honduros, 372 U.S. 10, 17, 83 S.Ct. 671, 675, 9 L.Ed.2d 547 (1963).

4. Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958).

5. 358 U.S. at 190, 79 S.Ct. at 184, quoting from Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 300 (1943) (emphasis supplied).

6. 116 U.S.App.D.C. at 247, n. 7, 322 F. 2d at 997, n. 7.

assumption of equitable jurisdiction by the district court. It is clear that the facts in *Atlas* are quite different from the instant case, for, here, the Court is confronted with a situation where there was an admittedly valid election and all the plaintiff seeks is an injunction compelling the Board to perform its statutory duty to certify the results of that election. Furthermore, in *Miami Pressmen,* the Court found that the failure of the Board to follow the provisions of the Act "amounted to arbitrary and capricious conduct by the Board, depriving the Union of a right given by the Act." [7]

The Board relies upon a number of other cases which held that an employer has no standing to pursue a *Leedom v. Kyne* remedy. Each of these cases can be distinguished from the present one. In *Kingsport Press v. McCulloch,* 118 U.S.App.D.C. 365, 336 F.2d 753 (1964), *cert. denied* 379 U.S. 931, 85 S.Ct. 330, 13 L.Ed.2d 343 (1964), the employer did not charge failure to comply with a mandatory provision of the Act. In *General Cable Corporation v. Leedom,* 107 U.S. App.D.C. 357, 278 F.2d 237 (1960), a valid election had not been held and the employer's suit was predicated upon a change in administrative policy; there was not an effort to compel compliance with a specific provision of the Act. In *Norris v. National Labor Relations Board,* 85 U.S.App.D.C. 106, 177 F.2d 26 (1949), the employer based its suit on grounds similar to that in *Atlas Life Insurance Company v. Leedom, supra,* namely, failure of the Board to hold a hearing prior to the ordering of an election. It is noted that the Supreme Court has interpreted the provision calling for a hearing as a discretionary matter with the Board rather than a statutory duty.[8] Besides being distinguishable on its facts, it is noteworthy that *Norris* was decided before *Leedom v. Kyne* when it was assumed that *no one* had recourse to the

courts. Finally, the Court is of the opinion that those cases wherein the employer was seeking to challenge a factual determination of the Board are clearly distinguishable from the instant case.[9]

Two Supreme Court decisions have reached the merits of an employer's suit in a certification proceeding. In *McCulloch v. Sociedad Nacional de Marineros de Honduros, supra,* the foreign subsidiary of an American corporation was found to have standing to pursue injunctive relief although the Board's certification proceeding had not yet resulted in a final order. It is significant that in *Sociedad,* for reasons of international policy, the employer was accorded standing even though there was no claim that the Board violated any specific statutory provision. In *Boire v. Greyhound Corporation,* 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), the Supreme Court in no way suggested that the lower court lacked jurisdiction simply because the plaintiff was an employer. The Court held that an adequate legal remedy was present and that the employer could refuse to bargain with the ultimately certified unit. The basis for the employer's suit was a claim that the Board erred in finding a joint employer relationship. The employer contended that the actions of the Board were contrary to the provisions of the Act and beyond the statutory powers vested in the Board.[10] Such a claim which envisions a determination as to the ultimate reach of the Act is distinguishable from the claim in the instant case wherein the plaintiff is seeking to compel the Board to comply with a specific mandate found in the Act.

▮ The above cases should be construed in the light of the ultimate issue in this case, namely, whether *this plaintiff* can seek equitable relief in *this Court* at *this time.* Perhaps an analysis of the Supreme Court's decision in *Leedom v. Kyne* would cast light upon the man-

---

7. 116 U.S.App.D.C. at 248, 322 F.2d at 998.

8. Inland Empire Dist. Council, etc. v. Millis, 325 U.S. 697, 65 S.Ct. 1316, 89 L.Ed. 1877 (1945).

9. See Eastern Greyhound Lines v. Fusco, 323 F.2d 477 (6th Cir. 1963).

10. Greyhound Corporation v. Boire, 205 F.Supp. 686, 688 (S.D.Fla.1962).

ner in which the Court sees this problem. It will be recalled that the professional association had won the certification election. It could have obtained judicial review by bargaining on behalf of the professional employees alone, thereby ignoring the unit ultimately certified by the Board. This would have amounted to a violation of § 8(b) (3),[11] and would have subjected the association to an unfair labor practice charge. This charge would have given the association the opportunity for review under § 10(f), the same section which the Board urges is available to the plaintiff in the instant case. While it could be argued that the § 10 review which could conceivably have been made available to the professional association in *Leedom v. Kyne* was beyond the control of the association (since it depended upon the filing of an unfair labor practice charge), the procedure available to this plaintiff is subject to the same defect. The Court recognizes that a union with which an employer refuses to bargain is more likely to file a charge than a conceivable complainant in *Leedom v. Kyne*, but this distinction does not go to the availability of "control" over the review procedure. In short, the Supreme Court in *Leedom v. Kyne* was faced with a situation wherein the Board had violated a plain statutory duty; the plaintiff could conceivably have obtained review through § 10(f). In the instant case, the Court finds that the Board has plainly violated the statutory duty to certify the results of an admittedly valid election; this plaintiff also could get review under § 10(f). The Court need not depend upon its own interpretation of *Leedom v. Kyne* to justify this result, for the Board itself has at least on one occasion stated that *Leedom v. Kyne* is not limited

to relief by an employee association or union.[12]

Under the peculiar and special circumstances of this case, the employer should not be required to subject itself to the stigma of being guilty of unfair labor practices in order to have standing to appeal the Board's refusal to certify the election.

The decision and order of the Board recites that the Board agent did not, in fact, engage in any irregularities. Thus, the "possibility that some of his conduct may erroneously have given such an appearance," in no way affects the validity of the election. The Court finds that the efforts of the Board to maintain the highest standards in the conduct of its elections to be a commendable goal. But when the pursuit of this goal results in the setting aside of an admittedly valid election and the refusal to certify the result thereof, contrary to statutory duty, the Court is of the opinion that it has a duty to enjoin the Board from subjecting an employer to a second election. If the actions of the Board agent which the Board found to have an appearance of irregularity had in any way affected the outcome of the election, as determined by the Board, the Court would have no hesitancy about dismissing this suit for lack of jurisdiction.

■ Although counsel for the plaintiff did not raise this point, the Board's action in ordering a second election, wherein the employer will be put to additional expense, could conceivably amount to a deprivation of due process.[13] In any event, the Court finds that the second election would constitute irreparable injury to the plaintiff and that it is entitled to a preliminary injunction.

Counsel will prepare appropriate findings of fact and conclusions of law in accordance with this Memorandum.

11. 29 U.S.C. § 158(b) (3).

12. See Brief for the National Labor Relations Board in Opposition to Petition for Writ of Certiorari, The Kingsport Press, Inc. v. McCulloch, No. 504, Supreme Court, October Term, 1964, at p. 8. See

also Boire v. Miami Herald Publishing Co., 343 F.2d 17 (5th Cir. 1965), cert. denied 382 U.S. 824, 86 S.Ct. 56, 15 L.Ed. 2d 70 (1965).

13. Fay v. Douds, supra.