**SWIFT & COMPANY, Plaintiff,**

v.

**Joseph H. SOLIEN, Regional Director for the 14th Region of the National Labor Relations Board, Defendant.**

**NATIONAL LABOR RELATIONS BOARD, Plaintiff,**

v.

**SWIFT & COMPANY, Defendant.**

**Nos. 67 C 24(3), 67 C 139(3).**

United States District Court
E. D. Missouri, E. D.

Aug. 22, 1967.

---

11. See footnote 1 supra.

Harold A. Thomas, Jr., Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., for Swift & Co.

Gerard Fleischut, Regional Atty., N.L.R.B., St. Louis, Mo., Marcel Mallet Prevost, Asst. Gen. Counsel, Washington, D. C., for Joseph H. Salien.

Gerard Fleischut, Regional Atty., N.L.R.B., St. Louis, Mo., for the N.L.R.B.

## MEMORANDUM OPINION AND ORDER

REGAN, District Judge.

These consolidated cases involve the authority and duty of the National Labor Relations Board as well as the jurisdiction of this Court. The basic facts are not in dispute.

Teamsters Local No. 729 (Union) has for some time been the certified exclusive bargaining agent for a union of truck drivers and dockhands employed by Swift & Company (Swift) at its meat packing terminal at Sikeston, Missouri. On June 22, 1966, Robert Ogles (Ogles), one of the employees in the unit, filed a petition with the Regional Office of the National Labor Relations Board (Board) at St. Louis, seeking an election among the union employees to decertify the Union as their representative.

Thereafter, on July 12, 1966, the Regional Director approved a Stipulation for Certification upon Consent Election signed by Swift, the Union and Ogles, by the terms of which all parties waived a hearing, direction of election, and the making of findings of fact and conclusions of law by the Board prior to the election. The Stipulation provided that the election "shall be held in accordance with the National Labor Relations Act, the Board's Rules and Regulations, and the applicable procedures and policies of the Board. Another provision was that any post-election procedures shall be "in conformity with the Board's Rules and Regulations."

One of the applicable procedures and policies of the Board is the rule announced on February 6, 1966, in its decision of Excelsior Underwear, Inc., 156 NLRB 1236 (Excelsior), which it then stated "will be applied in all election cases" directed or consented to more than 30 days from the date *Excelsior* was decided. That rule, adopted after consideration of briefs and arguments made on behalf of both employer and employee groups, provides that within 7 days after the Regional Director has approved a consent election agreement or after the close of the determinative payroll period for eligibility purposes, whichever is later, the employer must file with the Regional Director an election eligibility list, containing the names and addresses of all the eligible voters. The Regional Director, in turn, is required "to make this information available to *all* parties in the case." Of importance is the further provision of the rule that failure of the employer to timely file the eligibility list "*shall be grounds for setting aside the election whenever proper objections are filed.*"

In *Excelsior*, the Board expressly noted that the requirement there imposed applied to cases such as the instant one, where an election is directed upon a petition of an employee seeking to decertify an existing bargaining representative. In such situations, the petitioning employee as well as the union is entitled to the names and addresses of the employees as an aid in their ef-

forts to communicate their respective positions and in making challenges. "In short, the disclosure requirement here adopted [in *Excelsior*] applies whenever a Board election has been scheduled and insures *all* parties to the election, *whatever their viewpoint*, of an opportunity to communicate with the electorate."

Swift was specifically advised of the *Excelsior* rule prior to executing the Stipulation. However, it refused to furnish the required list, presumably as a matter of policy, although it did enter into the Stipulation. At the request of both the Union and Ogles, the election was ordered in spite of Swift's refusal, and the Union reserved its right to file objections on that ground.

The election was conducted on July 18, 1966. Eighteen ballots were cast. Seven employees cast valid ballots for the Union and eight employees cast valid ballots against the Union. Three ballots were challenged. The Union also filed timely objections to "conduct affecting the election", in particular the failure of Swift to furnish the Regional Director (or the Union) a list of the eligible voters including their names and addresses as required by *Excelsior*. The Union's challenges to two of the ballots were overruled, and those ballots were counted. As the result there were ten valid ballots, a majority of those counted, cast against the Union. However, the Union's objections to "conduct affecting the election", based on the refusal of Swift to furnish the *Excelsior* list, was sustained by the Board, the election was set aside, and a second election was ordered to be held.

On December 5, 1966, the Regional Director notified Swift that the second election would be conducted on December 19, 1966, and requested that, as required by the Board's orders and the *Excelsior* rule, Swift file with him three copies of an eligibility list containing the names and addresses of all eligible voters within seven days thereafter, or not later than December 12, 1966. On December 8, 1966, Swift notified the Regional Director it would not provide the eligibility list, and as a result the Regional Director then notified the parties that the second election would be postponed.

On December 23, 1966, the Regional Director caused a subpoena duces tecum to be issued on his own motion, directing Swift to produce and make available to the Board's Regional Office Swift's personnel and payroll records, or an eligibility list in lieu thereof, containing the names and addresses of all employees eligible to vote in the election. The subpoena was served by mail on December 27, 1966. Swift then filed a timely petition to revoke the subpoena, and this petition was denied by the Board by formal telegraphic order issued on January 5, 1967.

This was the status of the case on January 19, 1967, when Swift filed its action against the Regional Director seeking an injunction to require the Regional Director to certify the results of the July 18, 1966 election, to restrain him from holding a second election within twelve months from the July 18, 1966 election and from employing any Board process to force Swift to disclose the home addresses of its employees.

Thereafter, on May 1, 1967, the Board filed its action, in two counts, seeking an order directing Swift to produce and make available to the Board's authorized agents the relevant data set forth on the subpoena, or in lieu thereof to file with the Regional Director an election eligibility list showing the names and addresses of all employees eligible to vote in the election directed by the Board. On joint motion of the parties, the two cases were consolidated for all purposes.

In the Swift action, the Regional Director has moved to dismiss the complaint on the grounds the Court lacks jurisdiction over the subject matter and the complaint fails to state a claim upon which relief can be granted. In the Board action, Swift has filed motions for summary judgment and to quash the subpoena duces tecum or in the alternative to dismiss Count I of the complaint, and to dismiss Count II.

We first address ourselves to the Swift case. In brief, Swift contends that under Section 9(c) (1) of the National Labor Relations Act, it was the mandatory duty of the Board to certify the results of the July 18, 1966 election, and that the Board is without authority to order another election within 12 months after the first allegedly valid election has been held. Insofar as Swift seeks to enjoin an election within 12 months of the July 18, 1966 election, its action is now moot. The question of our jurisdiction to entertain the suit as to the certification issue is still alive, however.

Admittedly, this Court does not ordinarily have jurisdiction to judicially review, in a direct action for that purpose, a Section 9 representation determination of the Board. However, in two cases, "each characterized by extraordinary circumstances," the Supreme Court has "permitted district court review of orders, entered in certification proceedings." The first such case is Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210, which held that when the Board has acted in excess of its delegated powers and contrary to a specific prohibition in the Act an independent suit in a district court to set aside the Board's order may be maintained by a party on whom the unlawful action of the Board has inflicted an injury.

The other case, McCulloch v. Sociedad Nacional, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547, involved the application of American law to foreign-flag ships and their crews. The Court held that "the presence of public questions particularly high in the scale of our national interest because of their international complexion [was] a uniquely compelling justification for prompt judicial resolution of the controversy over the Board's power." 372 U.S., l. c. 17, 83 S.Ct., l. c. 675. The Court was careful to note that the exception recognized in *Sociedad Nacional* is not applicable to "a purely domestic adversary situation," and so "not to be taken as an enlargement of the exception in *Kyne*."

"The *Kyne* exception is a narrow one." Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849. Swift contends that the present case falls within the "narrow limits" of the exception judicially carved out in *Kyne*. We do not agree. The "extraordinary circumstances" which characterized *Kyne* were summarized in *Boire* (376 U.S., l. c. 480, 84 S.Ct., l. c. 898) in these words:

"In Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210, despite the injunction of § 9(b) (1) of the Act that 'the Board shall *not* (1) decide that any unit is appropriate * * * if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit,' the Board—without polling the professional employees—approved as appropriate a unit containing both types of employees."

The Board had theretofore *conceded* in the Court of Appeals that it "had acted in excess of its powers and had thereby worked injury to the statutory rights of the professional employees." Thus, the two controlling considerations in *Kyne*, which we do not find here present, were (1) that the Board's action was *indisputably and admittedly* "contrary to a specific prohibition in the Act" and (2) that such action clearly "worked injury to the *statutory rights*" of the complainant. (Emphasis supplied).

Swift argues that once the Board has directed and conducted an election, it has the mandatory duty to "certify the results thereof," and is specifically precluded from setting aside the election and ordering a new one within twelve months if the first election is a valid one. "Valid" is the key word in this argument. Swift concedes that the Board has "the authority and duty of the Board to set aside an election which has been *unfairly conducted* either because of employer or union coercion, or for some reason having to do with the mechanics of the election process. In such cases * * * the vice recognized

resulted in *unfairness* in the election itself, giving either the union or employer an extra advantage." Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch, 116 U.S.App.D.C. 243, 322 F.2d 993, 997–998.

■ However, it does not follow, as Swift argues, that an election is "valid" and fairly conducted simply because there is no proof of coercive or fraudulent tactics or because the count of the ballots was an accurate one. Under the *Excelsior* rule, assuming its validity, the Board could find that the election was not "valid."

■ Unquestionably, the Board is invested with a wide degree of discretion in establishing the procedures and safeguards to insure that an election is fair to all parties. N.L.R.B. v. Waterman S.S. Corp., 309 U.S. 206, 226, 60 S.Ct. 493, 84 L.Ed. 704; N.L.R.B. v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322; N.L.R.B. v. Lawrence Typographical Union No. 570, 10 Cir., 376 F.2d 643, 648. We are not impressed with Swift's contention that the Board could not reasonably conclude, as it did in *Excelsior*, that the opportunity for the parties to reach and inform all employees is a safeguard necessary to insure a fair election. If that is so, then the means by which such opportunity is to be afforded the parties is initially for the Board, not the Courts (certainly not at the present stage of the proceedings) to determine. What Swift overlooks is that the Board's power to determine fairness in an election is not to be narrowly circumscribed.

Swift attempts to champion and protect what it deems to be the right of its employees to make "uninformed choices." Significantly, it is the employer, not the employees, who attempt to invoke our jurisdiction to protect that "right." The employees may well have such a right (as by voluntarily closing their eyes, ears, and doors to profferred information), but the choice of whether to exercise that right should be theirs, not the employer's. It is, of course, true that the *Excelsior* rule, which facilitates communication with the employees, does not guarantee a fully informed electorate, any more than the availability of water to an unwilling horse will assure that he will drink, but the Board has the right to be concerned that the decision by the employees should, if possible, be an informed and reasoned one.

■ The timely filing of the required *Excelsior* list serves a two-fold purpose. For one, access to the list enables all parties to communicate with and fully inform the electorate. Additionally, the list facilitates the making of proper challenges, not only because it must be furnished in time to permit investigation by the parties, but also because the addresses therein contained are an aid to identification of the employees, as much so as are the names themselves.

Nor does Swift's complaint against the per se application of *Excelsior* entitle it to the relief it here seeks. The Board points out that representation proceedings should not be long drawn out. To compel the Board in each instance to make specific inquiry concerning the effect of the employer's failure to supply the eligibility list might tend to prevent the Board from functioning efficiently in representation cases by unduly prolonging and causing delays in the election process. Although not all of the factors which impelled the Board to adopt *Excelsior* are applicable in the present case (e. g., the number of employees involved), the major considerations apply in all such representation cases.

Swift makes the suggestion that since there are only 17 or 18 employees in the unit, the Union either has or with the aid of telephone directories and inquiry could easily obtain the addresses of the employees. If so, it may well be asked why Swift has so adamantly refused to supply a list of only 18 names and addresses containing information already known or available to the Union, and which for that reason could not adversely affect the "right" of its employees to an uninformed choice.

Here, the *Excelsior* rule on its face was admittedly applicable and known to be so by all parties, including Swift. Swift intentionally refused to comply with that rule, fully aware of the specific provision thereof that such failure "*shall* be grounds for setting aside the election whenever proper objections are filed", as they were in this case.

We must not overlook Section 9(c) (4) of the Act (29 U.S.C. § 159(c) (4)), which authorizes consent elections "in conformity with regulations and rules of decisions of the Board." Unquestionably, the July 18, 1966 consent election was not in conformity with the rule of decision theretofore announced in *Excelsior*. We seriously question whether, in view of the fact that the Stipulation for Consent Election entered into by Swift expressly provided that the election was to be held in accordance with the Act, the Board's rules and applicable procedures and policies, Swift is in a position to challenge the action of the Board in this case.

■■ The mere fact that Swift made known in advance that it would not furnish the required list does not affect its written agreement that the rule should apply. Cf. N.L.R.B. v. Hood Corporation, 9 Cir., 346 F.2d 1020, 1022. Stated simply, it would appear that by entering into the Stipulation, Swift necessarily agreed that if a losing party timely objected to its failure to furnish the *Excelsior* list, the election would be set aside and a new election ordered. Since timely objection was made by the Union, the losing party, on that ground, the Board had the right to apply its applicable policies and rules of decision and order a new election.

Here, unlike Bullard Company v. N.L.R.B., D.C.D.C., 253 F.Supp. 391, on which Swift relies, the Court is *not* "confronted with a situation where there was an *admittedly valid* election and all the plaintiff seeks is an injunction compelling the Board to perform its statutory duty to certify the results of *that* election." And even in the *Miami Newspaper Printing Pressmen's* case, the Board had found (and the Court sustained this finding) that the election was in fact a valid one, but set it aside only because of its groundless fears that a Court might hold otherwise (because of an apparent procedural defect which had been timely rectified). See comments of the same court explaining its *Miami* decision in Local 130, International U. of Elec. R. & M. Wkrs. v. McCulloch, 120 U.S.App.D.C. 196, 345 F.2d 90, 96. In the instant case, not only is there no admission of the validity of the July 18, 1966 election, but the Board has specifically found that such election was not valid and was inherently unfair because it did not conform to the requirements of the *Excelsior* rule.

■ Swift's position is that it may challenge the *Excelsior* rule and its application by the Board to this proceeding to invalidate the election, on the theory that such a rule is wholly beyond the powers of the Board. We cannot, however, say that a rule the major purpose of which is to insure, to the extent possible, a free and reasoned choice by an informed electorate, is so manifestly and clearly beyond the bounds of the Board's authority as to warrant the immediate intervention of this Court of equity to prevent the application of the rule to this proceeding. We do not believe that Congress intended a district court to intervene in situations of this kind, where the Board's action is not *patently* without legality, for the purpose of determining whether the Board's decision as to the validity of the election and the direction of a new election was proper.

As was said in Local 130, International U. of Elec. R. and M. Wkrs. v. McCulloch, 120 U.S.App.D.C. 196, 345 F.2d 90, 95,

"But to say that there are possible infirmities in an action taken by the Board by reason of an erroneous or arbitrary exertion of its authority in respect of the facts before it is not to conclude that there is jurisdiction in the District Court to intervene by injunction. For such jurisdiction to exist, the Board must have stepped

so plainly beyond the bounds of the Act, or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court even before the Board's own processes have run their course."

Hence, we do not decide (for lack of jurisdiction to do so), whether the July 18, 1966 election was in fact valid and not subject to be set aside. This because, at the very least, "it is not *plain* that the Board's action [either in promulgating or enforcing *Excelsior* in this case] was an attempted exercise of a power *specifically* withheld by the Act." Firestone Tire & Rubber Company v. Samoff, 3 Cir., 365 F.2d 625, 628.

As *Samoff* holds, the employer is not without remedy. Should the Union obtain a majority of the valid ballots cast at the second election, the employer, "if it is so inclined, may refuse to bargain with (the) Union and thus set (up) a situation preliminary to an enforcement or review proceeding". To the same effect is Leedom v. International Brotherhood of Elec. Wkrs., 107 U.S.App.D.C. 357, 278 F.2d 237, 239. And of course, should the Union lose the second election, the correctness of the Board's action will thereby become moot.

The present case, as noted supra, is wholly unlike *Kyne*, in which the professional employees whose rights were injured (not the employer) had "no other means, within *their* control" to protect and enforce the rights admittedly violated by the Board. It was this latter consideration, we believe, which impelled the Supreme Court to create, on behalf of such remediless parties, *Kyne's* "narrow exception", to be utilized only in case of a plain and manifest violation or defiance of the Act by the Board.

It follows that the Board's motion to dismiss Swift's complaint for lack of jurisdiction over the subject matter should be and is hereby sustained, and said complaint is hereby dismissed.

We next turn to the Board's action, seeking to enforce the *Excelsior* rule. Much of what we have said above is pertinent to the issue of enforceability. Several district courts have considered similar questions. See N.L.R.B. v. Wyman-Gordon Company, D.C.Mass., 270 F.Supp. 280; N.L.R.B. v. Wolverine Industries, D.C.Mich., 64 LRRM 2187; N.L.R.B. v. British Auto Parts, D.C. Cal., 266 F.Supp. 368, and N.L.R.B. v. Rohlen, D.C.Ill., 274 F.Supp. 715; in which compliance with the Board's subpoena has been ordered. Contra are N.L.R.B. v. Hanes Corp., D.C.N.C., 63 LRRM 2513 and N.L.R.B. v. Montgomery Ward Company, D.C.Fla., 64 LRRM 2061. The more recent of these decisions, and certainly the more persuasive in our view, have decided the issue in favor of the Board. We are informed that appeals are pending in some of these cases.

Under Section 11(1) of the Act (29 U.S.C. § 161(1)), the Board has authority to issue subpoenas in a pending proceeding if the evidence whose production is sought relates to any matter under investigation therein. That a representation proceeding is pending is indisputable. A vital part of the representation investigation is the regulation of the election. The identity of all employees eligible to vote on the question of representation is relevant to matters in question and under investigation in the representation proceeding. Hence, the "evidence" whose production is sought (the names and addresses of eligible employees) clearly "relates" to the issue of whether Swift's employees wish to be represented by the Union or by no union. It also bears upon whether the election will be fair to all parties.

Swift claims, however, that what is sought by the subpoena is not technically "evidence", in the sense that it does not tend to prove or disprove a fact at issue. Even assuming Swift's premise, we do not accept such a narrow meaning of the word "evidence" as used in the statute. We believe that the word "evidence", as applied to investigations, comprehends all relevant information, and is intended to include all books, records and other documents (as dis-

tinguished from testimony) which will be of assistance to the Board, in its reasonable judgment, in conducting the investigation of which the election is a part. The material sought by the Board is not "plainly incompetent or irrelevant to any lawful purpose." The subpoena demands the production only of such records as bear upon the names and addresses of eligible voters. The addresses of such voters are no less "evidence" than are the names themselves.

That the Board intends to make the information available to the Union (and to Ogles, as well) does not affect the right of the Board to be furnished the requested information. It is simply not true, in our judgment, that the Board is using its processes here for the purpose of assisting the Union's organizational efforts, even though conceivably such may be the result of an election by an informed electorate. Had a majority of the ballots cast been voted in favor of the Union, and Ogles had objected on the ground of Swift's failure to furnish the list, the Board's ruling would have been no different. In either case, under the *Excelsior* rule, a new election would have been ordered.

We see no substantial reason why Swift should persist in refusing to furnish the Board the information which *Excelsior* requires. On the other hand, if the Board is to proceed expeditiously in determining whether Swift's employees presently desire to be represented by the Union, compliance with the Board's subpoena should be ordered. In any event, we believe that under the facts the Board would be entitled to a mandatory injunction compelling Swift to comply with the *Excelsior* rule. Obviously, the *Excelsior* rule would be meaningless if there were no means by which the Board could compel the employer to comply therewith.

Accordingly, Swift's motions for summary judgment, to quash the subpoena duces tecum or in the alternative to dismiss Count I, and to dismiss Count II of the Board's complaint should be and are hereby overruled.