**MIDWAY CLOVER FARM MARKET, INC., Plaintiff,**

v.

**NATIONAL LABOR RELATIONS BOARD, Defendant.**

**Civ. A. No. 2957–69.**

United States District Court, District of Columbia.

Nov. 24, 1969.

Joseph Rotwein, Washington, D. C., for plaintiff.

Robert Randolph, Pittsburgh, Pa., for defendant.

## FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

HART, District Judge.

On November 6, 1969, a hearing was held in this court on plaintiff's motion for a preliminary injunction, concerning the validity of the defendant Board's decision to overturn an invalid election and order a second election. At that time the defendant National Labor Relations Board requested that the plaintiff's motion be denied, and further, requested that the complaint be dismissed. At said hearing an opportunity was extended to all to outline their positions for the record. Upon full consideration, the Court makes the following:

### Findings of Fact

1. The plaintiff, Midway Clover Farm Market, Inc., is a corporation, organized under the laws of the state of Ohio, and engaged in the operation of a retail grocery store in Wintersville, Ohio.

2. On September 13, 1967, a secret ballot election was conducted in a unit of plaintiff's employees appropriate for collective bargaining, under the direction and supervision of the defendant Board's Regional Director for the Eighth Region. Following the election, the Regional Director issued a tally of ballots showing that of approximately 50 eligible voters, 36 cast ballots, of which 16 were in favor of the Amalgamated Food Employees Union, Local 590, Amalgamated Meat Cutters & Butcher Workmen of North America, AFL–CIO (hereinafter "Amalgamated"), and 12 were in favor of the International Union of District 50, United Mine Workers of America (hereinafter "District 50"), with 18 challenged ballots. No objections were filed to the conduct of the election.

3. On October 3, 1967, Amalgamated filed an unfair labor practice charge with the Board, alleging, *inter alia,* that prior to the aforesaid election the plaintiff Company rendered unlawful assistance to District 50.

4. On October 19, 1967, the Regional Director issued a Supplemental Decision and Order Directing Hearing in the representation proceeding, wherein he recommended that the voting eligibility of several of the employees whose ballots had been challenged be resolved at a hearing to be held before a Trial Examiner. On November 7, 1967, the Regional Director further ordered that this hearing be consolidated with the hearing in the unfair labor practice proceeding.

5. On May 13, 1968, following the consolidated hearing, the Trial Examiner issued a decision, wherein he concluded that the plaintiff Company had unlawfully assisted District 50 in several respects. He also made recommendations concerning the resolution of the challenged ballots. Thereafter, on December 17, the Board severed the representation proceeding from the unfair labor practice proceeding, and ordered the Regional Director to issue a revised tally of ballots.

6. The Regional Director issued the revised tally on January 8, 1969, showing 20 votes for District 50 and 18 for Amalgamated. The challenges were sustained as to the remaining 8 ballots.

7. The Board on May 19, 1969 issued a Decision and Order in the unfair labor practice case, wherein it approved the Trial Examiner's finding that plaintiff herein had unlawfully assisted District 50 prior to the election. At the same time, it issued a Supplemental Decision, Order and Direction of Second Election in the representation proceeding, in which it held that plaintiff's unlawful conduct was sufficiently prejudicial to render the first election invalid, and therefore that that election should be set aside and a new election conducted when the effects of that conduct had been dissipated.

8. On October 16, 1969, the plaintiff Company filed both a motion for preliminary injunction and a complaint in this Court, requesting it to direct the National Labor Relations Board to certify the results of the first election and to enjoin the Board from conducting a second election.

## CONCLUSIONS OF LAW

1. Board representation proceedings are non-adversary proceedings which do not result in the issuance of judicially reviewable final orders. A. F. L. v. N. L. R. B., 308 U.S. 401, 409, 60 S.Ct. 300, 84 L.Ed. 347 (1939). The general rule in this class of proceedings, therefore, is that federal district courts are without jurisdiction to review Board rulings in representation proceedings, and that such rulings are reviewable only in the courts of appeals under Section 10(e) and (f) of the National Labor Relations Act if and when they form the basis of a subsequent unfair labor practice proceeding. Boire v. Greyhound Corp., 376 U.S. 473, 476–477, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); McCulloch v. Libbey-Owens-Ford Glass Co., 131 U.S.App.D.C. 190, 191, 403 F.2d 916, 917 (1968); IUE, etc. (Liberty Coach Co.) v. N. L. R. B., 135 U.S.App. D.C. 355, 360, 418 F.2d 1191, 1196 (July 22, 1969), Nos. 22, 181 and 22, 394, slip op., pp. 10–11. The only exceptions which have been recognized to this rule are (1) where the Board has contravened a clear and specific statutory mandate (Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1959)), (2) where the Board has violated a constitutional right of the plaintiff (Fay v. Douds, 172 F.2d 720 (C.A.2, 1949)), and (3) where the Board has interfered with the Government's conduct of foreign relations (McCulloch v. Sociedad Nacional, 372 U.S. 10, 83 S.Ct. 671, 9 L. Ed.2d 547 (1963)).

2. Plaintiff's contention that the Board has contravened a clear and specific statutory mandate so as to warrant the exercise of this Court's juris-

diction is without merit. Contrary to plaintiff's contention, Section 9(c) (1) of the Act, which states that the Board "shall certify the results" of an election which has been conducted, did not require the Board to certify the results of the election in this case, since it has been determined that Section 9(c) (1) "is not mandatory in all instances" (Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch, 116 U.S.App. D.C. 243, 247, 322 F.2d 993, 997 (1963)). Here, the Board determined that plaintiff had unlawfully assisted one of the unions which participated in the election, and therefore that the election should be set aside. It is clear that the Board has "the authority and the duty. * * * to set aside an election which has been unlawfully conducted." (*Ibid.*)

■■ Correspondingly, the Board's rules are not mandatory in all instances, and the Board's setting aside of the election was not prohibited by the absence of objections under the Board's procedures. Although the Board's Rules and Regulations provide that the parties shall file their objections to the election within 5 days (Sec. 102.69(a) ), and that if no objections are filed the Regional Director shall certify the results of the election (Sec. 102.69(c) ), they do not require the Board to certify the results of an invalid election such as that conducted herein. The purpose of these rules is simply to provide a manner in which the Board may be apprised of alleged election irregularities and not to limit the Board's authority to overturn invalid elections where the Board receives notice of these irregularities by other means.[1] Furthermore, "[I]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it * * * [and] [t]he action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party." N. L. R. B. v. Monsanto Chemical Co., 205 F.2d 763, 764 (C.A.8, 1953), and cases cited therein. Accord: N. L. R. B. v. Albritton Engineering Corp., 340 F.2d 281, 285–286 (C.A.5, 1965). See, N. L. R. B. v. Brown Lumber Co., 336 F.2d 641 (C.A.6, 1954).

■■ 3. Plaintiff has also failed to demonstrate that the Board has violated its constitutional rights. In this respect, plaintiff contends that the Board's direction of second election constitutes deprivation of property without due process of law in that participation in a second election will be expensive, burdensome and disruptive of the efficient functioning of its business. However, plaintiff has no constitutional right to have the results of the first election certified. See, Fay v. Douds, *supra*, 172 F.2d at 725–726. National Maritime Union of American v. Herzog, 78 F. Supp. 146, 156 (D.C., 1948), affirmed 334 U.S. 854, 68 S.Ct. 1529, 92 L.Ed. 1776 (1948); Teamsters, Chauffeurs, Helpers and Delivery Drivers, Local 690 v. N. L. R. B., 375 F.2d 966, 977 (C.A.9, 1967). Thus, plaintiff's interest in the outcome of the first election falls far short of the "vested property interest" required by the rule of Fay v. Douds.[2]

■■ 4. To the extent that plaintiff claims it has suffered irreparable injury warranting the exercise of this Court's jurisdiction because of the Board's direction of a second election, it is well settled that the expense of repre-

---

[1]. To the extent that the Fifth Circuit's decision in *N.L.R.B. v. Reliance Steel Products Co.*, 322 F.2d 49 (1963) holds that the Board may in certain instances be required to certify the results of an invalid election, that holding is contrary to the views of this circuit. See, Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch, *supra*. See also, Independent Inc. v. N.L.R.B., 406 F.2d 203, 206–207 (C.A. 5, 1969) ; N.L.R.B. v.

Tennessee Packers, Inc., 379 F.2d 172, 179 (C.A. 6, 1967).

[2]. Indeed, whether Fay v. Douds is still accepted authority is itself highly questionable. The doctrine announced in that case has never been recognized by the Supreme Court. See Boire v. Greyhound Corp., *supra*, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849. Moreover, several recent cases have cast doubt upon the continuing

sentation proceedings "[does] not constitute the sort of irreparable injury against which equity will protect in the face of an otherwise adequate remedy at law." Norris, Inc. v. N. L. R. B., 85 U.S.App.D.C. 106, 107–108, 177 F.2d 26, 28 (1949). Accord: Myers v. Bethlehem, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). In the instant case, plaintiff has such a remedy under Section 9(d) of the Act: it can simply refuse to bargain with whichever union wins the second election, and raise the validity of both elections in the subsequent unfair labor practice proceeding. Boire v. Greyhound, *supra*; Leedom v. Kyne, *supra*. Under these circumstances, there is no basis for this Court to assert its jurisdiction in the instant proceeding.

Wherefore, the plaintiff's Motion for Preliminary Injunction is hereby denied, and the defendant's request that the complaint be dismissed is granted by reason of the lack of jurisdiction of this Court.

validity of the doctrine. See, Herald Co. v. Vincent, 392 F.2d 354, 356 (C.A. 2, 1968) ; Boire v. Miami Herald Publishing Co., 343 F.2d 17, 20, n. 7 (C.A. 5, 1965), cert. denied, 382 U.S. 824, 86 S.Ct. 56, 15 L.Ed.2d 70; Utica Mutual Ins. Co. v. Vincent, 375 F.2d 129, 134 (C.A. 2, 1967) ; Lawrence Typographical Union v. McCulloch, 121 U.S.App.D.C. 269, 274, n. 1, 349 F.2d 704, 709, n. 1 (1965) (concurring opinion of Wright, J.) ; Greensboro Hosiery Mills, Inc. v. Johnston, 377 F.2d 28, 32 (C.A. 4, 1967).