**1162**

UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, Plaintiff,

v.

NATIONAL LABOR RELATIONS BOARD, Edward Miller, Frank W. Mc-Culloch, John H. Fanning, Gerald A. Brown, Howard Jenkins, Jr., and Ralph E. Kennedy, Defendants.

No. 1179-70.

United States District Court, District of Columbia.

Aug. 6, 1970.

Order Aug. 28, 1970.

George L. Arnold, Arnold, Smith & Schwartz, Los Angeles, Cal.; Stephen I. Schlossberg, Gen. Counsel, Stanley Lubin, Asst. Gen. Counsel, Detroit, Mich.; John Silard, Elliott Lichtman, Rauh & Silard, Washington, D. C., for plaintiff.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Glen M. Bendixsen, Chief of Special Litigation, Thomas Silfen, N. L. R. B., Washington, D. C., for defendants.

## MEMORANDUM OPINION

PARKER, District Judge.

This case arising under Section 9(c) of the National Labor Relations Act, (the Act) (29 U.S.C. § 159) involves a labor dispute between the United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, and the Thomas Engine Corporation, an engine rebuilding plant in the City of Industry, California. The Union seeks certification by the National Labor Relations Board as the accredited representative of the production and maintenance employees of the Corporation. Following failure of the Board to certify the results of an election and its issuance of an order directing a new election, the Union sued the Board and its individual members for declaratory and injunctive relief.[1]

The election was held on March 29, 1968, and on December 11, 1969, the Board issued its ruling.[2] During that interval and on September 25, 1968, the Upshur Engine Co., d. b. a. Tomadur, Inc., took over Thomas' business and became the successor employer. At the time of the March 29th election, Thomas employed about 167 eligible voters and 158 ballots were cast. Seven of the votes were challenged and one was voided. In August 1968, the Union filed exceptions to the challenged ballots and also filed a complaint of unfair labor practices against Thomas. The hearing on the exceptions and the complaint was scheduled before the Board's Trial Examiner in September 1968. However, various delays were encountered arising principally from nearly 140 days of continuances granted at the employer's request and time consumed by the Board's consideration of the issues involved. The Trial Examiner conducted a hearing in December 1968, and rendered a decision on April 25, 1969. This was followed by the Board's decision of December 11, 1969.

On the issue of representation the Board found:[3]

" * * * An unresolved election was conducted for Thomas' production and maintenance employees on March 29, 1968, at which time there were about 167 eligible voters and 158 ballots cast, with 74 for the Union, 76 against the Union, 7 challenges, and 1 void ballot. Thereafter, the Board directed that the challenges be deter-

1. The Board's order only proved for a new election and did not set aside the earlier election. Thomas Engine Corp., 179 N.L.R.B. No. 165 (1969).

2. 179 N.L.R.B. 165 (1969).

3. Id. at 5.

mined in the instant consolidated proceeding by the Trial Examiner who recommended that 4 challenges be sustained and that 3 ballots be opened in order to ascertain whether the Union had won the election and should be certified as the bargaining agent for Upshur, the successor of Thomas.

"In contrast to Thomas' work force of 167 production and maintenance employees at the time of the election, Upshur in December 1968, as already stated, had but 97 employees in the unit, of whom only 90 were former Thomas employees. Upshur contends, *inter alia,* that this was a 'substantial change' in the composition of the unit and that the Board should therefore direct a new election for a current unit of Upshur's production and maintenance employees.

"We find merit in Upshur's contention. Permitting the prior election in March 1968, involving 167 Thomas employees now to determine the choice of a bargaining representative for Upshur, which had only 90 former Thomas employees and 7 new employees as of December 1968, would give improper weight to the wishes of those employees who did not become part of the Upshur work force and would disenfranchise all of Upshur's newly hired employees. In view of this factor as well as the 20-month time lapse since the election, we believe that it would best effectuate the policies of the Act to set aside the earlier election and to direct a new election [footnote omitted]. \* \* "

The Board adopted "the findings, conclusions, and recommendations of the Trial Examiner only to the extent consistent herewith." [4]

The Examiner's findings regarding the challenged ballots were not disputed or questioned by the Board. No objections were filed by either party contesting the validity of the March 29, 1968, election. Nor was there any finding or even suggestion of any improper conduct by anyone influencing the employees' vote, the election procedures or the tallying of the vote.

In January 1970, the Union moved timely for a reconsideration of the Board's decision and to reopen the record for the introduction of newly discovered evidence—namely, that after the initial hiring of 90 Thomas employees by Upshur on September 25, 1968, approximately 25 more former Thomas employees were rehired so that the Upshur unit of approximately 130 members included a sizeable majority of former Thomas employees. On March 12, 1970, the Board denied these motions, and an election was ordered.

The election was scheduled for May 8, 1970, and three days prior to that date, the Union filed this action seeking to restrain the Board from conducting the second election, a finding that the election of March 29, 1968 was valid, and an order requiring the Board to certify that election's results. Plaintiff's requests for a temporary restraining order and a preliminary injunction were denied and the Board was authorized to conduct the May 8 election. However, the Court required that the cast ballots be impounded and sealed pending a disposition of the merits of the case. Thereafter on May 25, 1970, the Board filed a motion to dismiss for want of jurisdiction, and, in the alternative, for summary judgment. The Union filed a cross motion for summary judgment on June 8, 1970.

For the reasons set forth the Board's motions are denied and the Union's motion for summary judgment is granted.

In seeking to enjoin the second election and to enforce the certification of the 1968 election results, the Union claims that the Board's action was arbitrary and capricious, deprived the Union of its statutory right to represent employees, deprived the employees of their statutory right to the Union's representation and otherwise violated the plain and mandatory provision

4. Id. at 1.

of § 9(c) (1) of the Act, 29 U.S.C. § 159. That Section provides in pertinent part that when a question of representation exists, the Board " * * * shall direct an election by secret ballot and *shall certify the results thereof.*" (Emphasis added.)

The Board urges that this Court lacks jurisdiction and relies upon a number of cases for the proposition that, generally, representation proceedings under the Act are not adversary in nature, do not result in judicially reviewable final orders and are, therefore, not immediately appealable to the Federal District Courts. Those cases are distinguishable in that each concerned tainted elections or " * * * challenges to Board action in the area of directing elections, and determinations of the 'appropriate unit.'" Miami Newspaper Printing Pressmen's Union, Local 46 v. McCulloch, 116 U.S.App.D.C. 243, at 248 n. 11, 322 F.2d 993, at 988 n. 11 (1963), and cases cited therein.[5]

■ Judicial review of Board orders has been generally limited to Section 10 (e) and (f) of the Act, 29 U.S.C. § 160 (e) (f). However, the Courts have noted three exceptions: where Board action constituted a denial of constitutional rights, Fay v. Douds, 172 F.2d 720 (2nd Cir. 1949); where the Board acted in excess of its delegated powers and contrary to specific prohibitions of the Act, Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); and where the issues presented were of significant national interest because of their effect on foreign relations and commerce, McCulloch v. Sociedad Nacional de Marineros de Honduras, 372

U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963).

In Leedom v. Kyne the Board certified a group including professional and nonprofessional employees as the appropriate bargaining unit. While Section 9 (b) of the Act, 29 U.S.C. § 159(b) gives the Board wide latitude in determining the representative bargaining unit, it specifically prohibited the Board from grouping together those employees " * * * unless a majority of such professional employees vote for inclusion in such unit; * * *." The number of professional employees was considerably larger than the non-professional group, and in certifying a unit which included both the Board reasoned that the statutory prohibitions required that the professional employees' consent was necessary only when they were a minority. The Supreme Court rejected their contention and ruled that the Act specifically prohibited an inclusion of the two groups by the words "shall not", and that this could be avoided only under stated conditions. It held, therefore, that the Board had deprived the professional workers of a right assured to them by the Congress and that the Court had jurisdiction, exclusive of a Section 10 proceeding, to set aside and void an attempted exercise of power specifically withheld under the Act.

Looking to the rationale and the exceptions afforded by the *Leedom* rule, the Union claims that this Court has jurisdiction and the authority to compel the certification of the results of the March, 1968 election under Section 9(c) (1) of the Act, 29 U.S.C. § 159(c) (1).

---

5. E. g., Tainted election: I.U.E. v. N.L.R.B. (Liberty Coach), 135 U.S.App.D.C. 355, 418 F.2d 1191 (1969); Midway Clover Farm Market v. N.L.R.B., 318 F.Supp. 375, 72 L.R.R.M. 2789 (D.C. D.C.1969). Direction of election: Lawrence Typographical Union v. McCulloch, 121 U.S.App.D.C. 269, 349 F.2d 704 (1965); Local 130, I.U.E. v. McCulloch, 120 U.S.App.D.C. 196, 345 F.2d 90 (1965), expressly distinguishing Miami Newspaper, supra, at 120 U.S.App.D.C.
202–203, 345 F.2d 96–97; Determination of appropriate bargaining unit: Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), expressly distinguishing Leedom v. Kyne, at 376 U.S. 481, 84 S.Ct. 894; McCulloch v. L-O-F Glass Co., 131 U.S.App. D.C. 190, 403 F.2d 916 (1968); A.F.L. v. N.L.R.B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940), expressly avoiding the issue in this case, at 308 U.S. 404–405 and 412, 60 S.Ct. 300.

Following the *Leedom* ruling, our Court of Appeals held in *Miami Newspaper, supra,* that the Act requires the Board to certify the results of a valid election. There, the review of a Regional Director's order scheduling an election was requested by the employer but denied by the Board acting through only one member. The latter order was subsequently vacated by the full Board, the employer's request granted and the matter was set down for hearing. Meanwhile, the scheduled election was held but the ballots were impounded pending final determination of the Court proceeding. The employer's contentions were heard by the Board on the merits and the Regional Director's earlier direction of an election was affirmed. However, instead of reinstating that election and certifying its results, the Board ordered the Director to conduct a re-run election, which election was held.

In applying the teaching of Leedom v. Kyne our Court of Appeals held (116 U.S.App.D.C. at 247, 322 F.2d at 997) that:

"The language which the Supreme Court held had been violated was in terms of 'shall not,' words of prohibition. The provision with which we are here concerned, Section 9(c) (1), is in terms of requirement: 'If the Board finds upon the record of such hearing that such a question of representation exists, it *shall* direct an election by secret ballot and *shall* certify the results thereof.' We are unable to read the Court's decision in Leedom v. Kyne as limited to the negatively worded prohibition there involved. If, after the Board finds that a question of representation exists, and an election is held, the requirement that it 'shall' certify the results is mandatory, then a failure to so certify would be prohibited by the Act and in excess of the Board's powers. A party would be as aggrieved by such a failure as by an act of the Board contrary to an express prohibition.

"* * * This Court, other courts of appeals, and the Board have recognized the authority and duty of the Board to set aside an election which has been unfairly conducted either because of employer or union coercion, or for some reason having to do with the mechanics of the election process. (footnote omitted) In such cases, however, the vice recognized *resulted in unfairness in the election* itself * * *." (Emphasis added.)

The *Miami Newspaper* ruling was later applied by this Court in I.U.E. v. N.L.R.B., 67 L.R.R.M. 2361 (D.C.D.C. 1968) and Bullard Company v. N.L.R.B., 253 F.Supp. 391 (D.C.D.C.1966). In these latter cases it is noted that the Court found there had been *valid elections.* This of course is in contrast to those situations where elections have been set aside because they were unfairly conducted. In dismissing the Board's decision to schedule a second election the Court concluded as a matter of law in the *I.U.E.* case at 2363, that the Board's refusal to certify the results of a representation election:

"2. * * * violates the plain and mandatory provisions of Section 9(c) (1) of the Act, which directs the Board to certify the results of such representation elections.

"3. * * * was arbitrary and capricious conduct, as Section 9(c) (1) of the Act required the Board to certify the results of that election.

"4. * * * deprived plaintiff of its statutory right to represent the employees selecting it as their bargaining agent, and deprived the employees of their statutory right to plaintiff's representation."

In the *Bullard Company* case, *supra,* the Board set aside an election and directed a second election because of a complaint alleging misconduct by a Board's representative conducting the election. No irregularities were in fact found by the Board and the election was otherwise held to be valid. The Board,

nonetheless, felt that under the circumstances a re-run election was proper and desirable. The trial judge, in concluding that the employer was entitled to compel certification of the election and to enjoin a second election, held (253 F. Supp. at 395):

" * * * The Court finds that the efforts of the Board to maintain the highest standards in the conduct of its elections to be a commendable goal. But when the pursuit of this goal results in the setting aside of an admittedly valid election and the refusal to certify the result thereof, contrary to statutory duty, the Court is of the opinion that it has a duty to enjoin the Board from subjecting an employer to a second election. If the actions of the Board agent which the Board found to have an appearance of irregularity had in any way affected the outcome of the election, as determined by the Board, the Court would have no hesitancy about dismissing this suit for lack of jurisdiction."

In reaching its decision in this proceeding the Board found that certain fatal infirmities reflecting a substantial change in the composition of the Unit, occurring in the interval between the March, 1968 election and December, 1969, the date of the Board's Decision, warranted a new election. Specifically, it found that a 20-month lapse of time during which Upshur succeeded Thomas as "a new and completely unrelated employer" and changes in the employee complement under a new and unconnected employer, all invalidated the election as a fair measure of employee sentiment.

■ With respect to the 20-month lapse of time between the election and the date of the Board's ruling, it cannot be overlooked that much of the delay which ensued was, with minor excep-

tions, attributable to the employer's request for continuances, objected to by the Union but granted, as well as to delays granted which arose routinely in the Board's proceedings. While there may have been reasonable grounds for this lapse of time, to cite it as the basis for a new election would penalize the Union for circumstances over which it had no control. Nor is such position consistent with recent rulings of the Board or the Courts on this issue.[6]

As to the other contentions the Court cannot discover nor did the Board's findings single out any significant facts to support the contention that Thomas was "new and completely unrelated" to Upshur. The Board's Decision was based upon the Trial Examiner's findings.[7] And on this point the Examiner at page 23 clearly stated:

"*Upshur made a few changes in the operation of Thomas which I consider minor. * * **

"*I find Upshur is a successor employer to Thomas. * * * Upshur is the same 'employing industry' as was Thomas. There has been a continuity of the original business. The same plant and substantially the same facilities have been used. There has been substantially the same work force. The business is the same.* Much of the same equipment has been used. I have found that Upshur had knowledge of the unfair labor practice and the pending complaints at the time it took over Thomas' operations, at least through Walker, Upshur's plant superintendent." (Emphasis added.)

The relevant portion of the Board's Decision (179 N.L.R.B. 165 at 2) states:

"The Trial Examiner found, and we agree, that Thomas, which operated an engine rebuilding plant in the City of Industry, California, until Septem-

---

6. See N.L.R.B. v. L. B. Foster Company, (9th Cir. 1969) 418 F.2d 1 at 4–5 and cases cited; Lou De Young's Market Basket, 181 N.L.R.B. No. 10, 73 L.R.R.M. 1296 (1970).

7. Thomas Engine Corp., N.L.R.B. Trial Examiner's Decision (April 25, 1969).

ber 9, 1968, violated Section 8(a) (1), (3) and (4) of the Act by engaging in unlawful conduct, including discriminatory warning notices to two employees and the discriminatory discharge of employees. * * * *The Trial Examiner also correctly found that Upshur, which took over Thomas' business with knowledge of the latter's unfair labor practices,* (footnote omitted) *and resumed operation of the plant on September 25, 1968, was the successor employer to Thomas."* (Emphasis added.)

Finally, as to the change in the bargaining unit, the facts are that in March, 1968, there were originally 167 eligible voters and 158 ballots were cast. Thereafter, in September of that year, Upshur succeeded Thomas, employing approximately 97 employees, 90 of whom were formerly employed by Thomas. Later, employment allegedly increased to approximately 130 employees of whom nearly 120 were former employees of Thomas.

The Court is not persuaded that either of these changes in any way justified the Board's action. In setting aside the 1968 election the Board cited a prior decision, United Transports, Inc., 107 N.L.R.B. 1150 (1950). There, following an election in which certain ballots were challenged, a reorganization took place during which the employer, who had made the challenges, introduced radical changes in job classifications and descriptions and made new job assignments. In refusing to certify the election results the Board recognized and was "impressed by the unique features" of the case which included a substantial change in the employer's operations and the functions of the employees.

■ It appears that the Board has consistently followed the concept that where the nature and character of the industry and employment have remained essentially the same despite a change in ownership, the new employer is considered a successor and, therefore, bound. This rule was recently applied by the Board in The William J. Burns International Detective Agency, Inc., 182 N.L. R.B. No. 50 (1970) at p. 5. Also see Douglas Motors Corp., 128 N.L.R.B. 307, 46 L.R.R.M. 1292 (1960).

■ Neither the validity nor the fairness of the March, 1968 election is in dispute. There is no suggestion of improper conduct which in any way influenced the outcome of the election. *Bullard Company, supra.* The Board's conclusion that to certify the results of the 1968 election now would give improper weight to the wishes of the employees who did not become part of the Upshur unit and would disenfranchise all of Upshur's newly hired workers in no way imputes "unfairness in the election *itself." Miami Newspaper, supra,* 322 F.2d at 998. (Emphasis added.)

■■ What the Board seeks is unrestrained authority to refuse to certify an election whenever it concludes, in its unbridled discretion, that the *effects,* rather than the election itself, are in some undefined manner "unfair." To this Court it appears that the results of the Board's approach are prejudicial to the Union as well as contrary to the statutory purpose, namely, a speedy resolution and adjustment of industrial disputes.

This is not to say that the Board can never change its policies or standards. Certainly experience may demonstrate that change is desirable. Indeed, the statute has conferred broad discretion on the Board. But such changes should be consistent with the spirit and the letter of the statute, have a rational basis, and not be instituted in an arbitrary manner or inherently unfair to those who have reasonably relied upon prior existing policies. Such does not appear to be the result of the Board's ruling.

Accordingly, the motion of the Union for summary judgment is granted and the motion of the Board for summary judgment is denied. The Board is directed to open the challenged ballots and otherwise certify the results of the election of March 29, 1968. Counsel for the

Union shall prepare and file an appropriate order within ten days.

## ORDER AND JUDGMENT

This cause having come on to be heard on the motion of defendants for dismissal of this action and on the motions of plaintiff and defendants for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Court having considered the pleadings in the action, the statements of material facts not in dispute, the memoranda and briefs submitted by the parties in support of their respective positions, and having heard oral argument and having found that there is no genuine issue of fact to be submitted to trial, and having concluded that plaintiff is entitled to judgment as a matter of law, it is hereby:

Ordered that plaintiff's motion for summary judgment is in all respects granted, and it is further

Ordered that defendants' motions to dismiss and for summary judgment are each in all respects denied, and it is further

Ordered, adjudged and decreed that defendants expeditiously open the challenged ballots as recommended by the Trial Examiner in his Intermediate Report and certify the results of the election of March 29, 1968.